The PEOPLE of the State of Colorado, Petitioner,

v.

Wallace DUNLAP and Perry Dunlap, Respondents.

No. 80SA298.

Supreme Court of Colorado, En Banc.

Feb. 9, 1981.
Rehearing Denied March 2, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Lynne Ford, Asst. Atty. Gen., Denver, for petitioner.

James H. Chalat, Denver, for respondents.

ROVIRA, Justice.

The People of the State of Colorado (petitioner) filed a petition for injunctive relief against Wallace Dunlap and Perry Dunlap (respondents) pursuant to C.A.R. 21. The petition requests that we enjoin the respondents from proceeding *pro se* as plaintiffs in any present or future litigation in the state courts of Colorado. We issued a rule to show cause why the injunction should not be granted. The respondents, through their attorney, filed an answer. We now make that rule absolute.

On August 8, 1978, Wallace Dunlap, appearing *pro se*, filed seven complaints in the District Court in and for the County of Kiowa. The named defendants were three state patrolmen, a county judge, a deputy district attorney, and the clerk of the district court. On the same day, Perry Dunlap, also appearing *pro se*, filed a complaint against a state patrolman.

The actions against the state patrolmen arose from traffic offenses for which the respondents were issued citations. The complaints filed against the county judge and the deputy district attorney arose from the acts of seeking and issuing a bench warrant, and the complaint against the

clerk of the district court was based on her failure to provide a transcript without a court order.[1]

Subsequently, the judges of the Fifteenth Judicial District disqualified themselves, and Justice Edward C. Day, retired, was appointed to hear the cases. Motions to dismiss were filed by the defendants, and all of the cases were subsequently dismissed with prejudice.

A few months later, the respondents, again appearing *pro se*, filed a complaint in the district court of Kiowa County against sixteen state officials and their spouses. Later, six more state officials and their spouses were added as defendants. These defendants included seven of the defendants named in the eight cases which had previously been dismissed with prejudice and expanded the circle of defendants to include attorneys who had appeared in the previous actions, judges of the Fifteenth Judicial District, Justice Day, the Governor of the State of Colorado, the district attorney, and two insurance companies. This suit alleged a violation of the respondents' constitutional rights and rights of "desubito."[2]

The respondents also filed and caused to be recorded what they denominated as "common law" liens and attachments against the property of some of the defendants.

Again, motions to dismiss were filed by the defendants, and the matter was heard by Judge William L. Gobin, who had been appointed to hear the case. In his Order and Judgment the trial court found:

(1) that the respondents had failed to comply with the most basic provisions of the Colorado Rules of Civil Procedure;

1. The respondent Wallace Dunlap had sued a district court judge from Kiowa County in federal district court for his action in holding Dunlap in contempt of court during a hearing to determine his ability to provide support for his minor children. Respondent had sought the transcript of this proceeding. His federal cause of action was dismissed with prejudice for failure to state a claim on September 6, 1978.

2. *Black's Law Dictionary* (revised 4th ed. 1968) defines *desubito* as follows: "To weary a person with continual barkings, and then to bite; spoken of dogs." Presumably, respondents were claiming misconduct by public officers and employees. As the trial court ruled, there is no recognized claim for relief for such assertions as *desubito* in the Colorado courts. The respondents' substantive claims of official misconduct had already been dismissed with prejudice and were not appealed in earlier cases.

(2) that the allegations directed to the defendant judges all relate to actions taken by the judges while performing their official duties and the doctrine of judicial immunity prevented respondents from obtaining relief in damages;

(3) that the other issues raised by respondents had already been litigated to conclusion in the cases filed in 1978;

(4) that there is no recognized claim for relief, statutory or otherwise, for such assertions as "desubito";

(5) that respondents' present claims were of a "patently idle, empty and unsupportable nature"; and

(6) that respondents had engaged in a practice of indiscriminate joinder of defendants, including "every state judge, attorney, patrolman, and sheriff" with whom the respondents had dealt adversely since the filing of their 1978 complaint.

The trial court concluded that the maintaining of the action was "frivolous and groundless," dismissed the complaint with prejudice, ordered that the defendants were entitled to judgment for attorneys fees, and declared that the common law liens were released.

The respondents, through their attorney, claim that *pro se* access to the courts should not be enjoined when alternative means are available to discipline or limit persons from filing allegedly frivolous or vexatious law suits. They suggest that counterclaims filed by defendants or lawsuits filed against the respondents seeking damages are available alternatives and would be a less restrictive method of regulating the fundamental right of citizens to litigate their claims in the courts.

I.

On the facts presented to us in this original proceeding, we have no difficulty finding (1) that the respondents pressed claims in state courts which had already been adjudicated as without merit, and (2) that their method of procedure—expanding joinder of defendants to include lawyers, judges, and other parties perceived as opposing them in the earlier litigation— threatens a serious strain on the judicial resources of this state. The issue we face here is the nature of the remedy which this court should enforce in order to control the respondents' interference with state judicial processes.

The petitioners seek an injunction barring respondents from initiating proceedings without an attorney to represent them. The respondents argue that no injunction should be granted when alternate legal remedies exist to penalize a litigant who abuses his right to represent himself in court. Indeed, if the respondents' abuse of the courts had been limited to matters of private and individual concern, then private and individual remedies would seem adequate to protect opposing litigants and compensate them for their losses. However, an injunction issued from this court is appropriate when the procedure followed by private litigants conflicts with important public rights and interests and when it resists other means of control. *See People ex rel. Bentley v. McClees*, 20 Colo. 403, 38 P. 468, 26 L.R.A. 646 (1894); *Colo.Const.* art. VI, sec. 3.

Every person has an undisputed right of access to the Colorado courts of justice, *Colo.Const.* art. II, sec. 6, but this right may not be abused. The right of self-representation in civil suits must in a proper case yield to the principle that "right and justice should be administered without sale, denial or delay." *Colo.Const.* art. II, sec. 6. This court has both the duty and the power to protect courts, citizens and opposing parties from the deleterious impact of repetitive, unfounded *pro se* litigation. *Board of County Commissioners of County of Boulder v. Barday*, 197 Colo. 519, 594 P.2d 1057 (1979); *People v. Spencer*, 185 Colo. 377, 524 P.2d 1084 (1974); *Shotkin v. Kaplan*, 116 Colo. 295, 180 P.2d 1021 (1947). *See Colo.Const.* art. VI, sec. 2(1) and art. VI, sec. 3.

This case is similar to the situation we addressed in *Barday, Spencer,* and *Shotkin*:

"[N]umerous and expanding suits have created unwarranted expense to taxpayers in processing the claims and have interfered with the functioning of the court system so as to hamper the efficient administration of justice for other litigants who seek redress in the state courts." *Barday, supra*, 197 Colo. at 522, 594 P.2d at 1059.

A plaintiff who represents himself but who, like the respondents here, fails to comply with relevant rules of procedural and substantive law is ordinarily not subject to this court's disciplinary authority over licensed attorneys. *See Shotkin, supra.* Where, as here, a plaintiff proceeds without regard for the law governing his case, his fellow citizens, not merely opposing litigants, must meet the expense of his meritless suits as a result of increased court costs, crowded dockets, and the unreasonable delay and confusion that accompanies a disruption of proper judicial administration. *See Spencer, supra.*

The respondents' claims have been raised against public officers, public employees, and the spouses of these defendants. As the trial court found, these claims are of a "patently idle, empty and unsupportable nature." Moreover, they were associated with so-called "common law" liens and attachments of the real property of some of the defendants. We conclude that the respondents either have proceeded in order to harass public officials in the performance of their rightful duties or that the respondents need an attorney to aid them in structuring their future claims against such parties. *See Barday, supra.* In either case, the respondents have "no right to further burden the state court system by the methods [they have] heretofore employed." *Id.* 197 Colo. at 522, 594 P.2d at 1059. Consequently, we order that the respondents be prohibited from further representing themselves as plaintiffs in any present or future actions related to or arising out of their involvement with public officers or public employees.[3]

The rule is made absolute.

---

**3.** Our injunction is limited to a restriction on the respondents' right of self-representation as plaintiffs. Even in this class of cases, the respondents may proceed with legal counsel. They are, of course, free to appear *pro se* in their own defense. This injunction does not infringe the respondents' constitutional rights. *See Barday, supra.*