The BOARD OF COUNTY COMMIS-SIONERS OF MORGAN COUNTY, Colorado; Commissioner John A. Crosthwait; Commissioner Cynthia Erker; Commissioner Mark Arndt; County Attorney Christina C. Bauer, Esq.; E. Ord Wells, Esq., of counsel to the Board of County Commissioners; Robert A. Sagel, Morgan County Treasurer, by their attorneys, Greengard, Senter, Goldfarb & Rice; Robert J. Dyer, III, Esq.; Paul J. Ertz, Esq.; C. Gail Hunter, Esq., Bankruptcy Trustee and her attorney, Arthur Lindquist–Kleissler, Esq., Petitioners,

v.

Rainsford WINSLOW and Winifred Winslow, Respondents.

No. 93SA86.

Supreme Court of Colorado, En Banc.

Nov. 15, 1993.

Rehearing Denied Nov. 29, 1993.

Greengard Senter Goldfarb & Rice, Steven J. Dawes, Cheryl A. Martin, Denver,

Christina C. Bauer, Morgan County Atty., Brush, Paul Urtz, Robert J. Dyer, and Arthur Lindquist–Kleissler, Denver, for petitioners.

Rainsford J. Winslow, pro se.

Winifred W. Winslow, pro se.

Haffke, Haffke & Lebsack, George R. Haffke and Ronald A. Lebsack, Fort Morgan, amicus curiae for Richard G. Petrino and Jacquie E. Petrino.

Chief Justice ROVIRA delivered the opinion of the Court.

The Board of County Commissioners of Morgan County, several individual commissioners, County Attorney Christina C. Bauer, Morgan County Treasurer Robert A. Sagel, and several attorneys (referred to collectively as petitioners), filed a petition for injunctive relief against Rainsford and Winifred Winslow (respondents) pursuant to C.A.R. 21. The petition requests that respondents be enjoined from seeking any affirmative relief while appearing *pro se* in any present or future litigation in the state courts of Colorado. We issued a rule to show cause why the injunction should not issue, and now make that rule absolute.

## I

In 1979, Rainsford Winslow was named as a defendant in a class action suit in the District Court of Morgan County ("Morgan County Case"). The plaintiffs, owners of property in a residential subdivision of Fort Morgan established by the Winslows, claimed that he sold them lots and breached a number of commitments relating to roads, water, and sewer service as well as several restrictive covenants. Judgment was entered against Winslow. Winslow appealed to the Colorado Court of Appeals arguing that he had been denied a fair trial before an impartial judge. Because Winslow failed to order a trial transcript, the court of appeals dismissed the appeal with prejudice in 1983.

Since initiation of the Morgan County Case, respondents have engaged in what can only be described as full-scale assaults against judges, attorneys, public officials, and others in the state courts of Colorado as well as in the federal courts—nearly all of which can be traced, directly or indirectly, to the Morgan County Case.

All told, respondents have filed 162 separate proceedings in the district courts of Morgan, Washington, and Weld Counties, the county courts of Morgan and Washington Counties, the Colorado Court of Appeals, the Colorado Supreme Court, the United States District Court for the Districts of Colorado and Wyoming, the Tenth Circuit Court of Appeals, and the United States Supreme Court. The vast majority of these actions have been summarily dismissed on the grounds that respondents failed to comply with procedural requirements of the court, failed to allege cognizable claims, or failed to allege claims that had not been previously adjudicated.[1]

As a result of respondents' conduct while appearing *pro se*, a number of courts have entered injunctions against them restricting their ability to appear *pro se*. These include injunctions issued by the United States District Court for the Districts of Colorado and Wyoming, the United States Bankruptcy Court for the District of Colorado, and the county and district courts of Morgan County. On several occasions; respondents have filed repetitive claims in improper venues in an apparent attempt to vitiate the effectiveness of these injunctions.

In *Winslow v. Romer*, 759 F.Supp. 670 (D.Colo.1991), the court enjoined Rainsford Winslow from proceeding as a proponent of any claim *pro se* in the United States District Court for the District of Colorado without first obtaining the court's permission. In granting the injunction, the court summarized Winslow's conduct as follows:

---

1. Respondents' *pro se* filings are far too numerous to permit any greater summation here. For a more detailed explication of some of respondents' *pro se* filings, *see Winslow v. Romer*, 759 F.Supp. 670, 679–83 (D.Colo.1991), and *Board of County Comm'rs of Morgan County v. Winslow*, 706 P.2d 792, 793–94 (Colo.1985).

A review of [the thirty-four actions that Winslow has commenced in this court since 1983] indicates that nearly every one can be traced, directly or indirectly, to the Morgan County Case. By filing repetitive, often frivolous pleadings, Winslow demonstrates his failure to comprehend fundamental principles of jurisdiction, stare decisis and res judicata. Winslow's filings are many times incorrect in procedure and form, and he often attempts to evade the court's final ruling on a matter by filing multiple motions for reconsideration. Once having commenced an action, he seeks to expand the proceedings to include matters outside the scope of the original complaint and, often, outside the court's jurisdiction. Several parties have notified the court that Winslow has failed to comply with federal and local procedural rules requiring the service of pleadings and other papers filed with the court. Monetary sanctions have not proven effective in deterring his abuse of the legal process.

*Winslow*, 759 F.Supp. at 678.

Respondents' approach to trial and appellate practice, as revealed by their past conduct, is exemplified in the present case. Respondents have filed five documents with this court, none of which comports with the Colorado Appellate Rules. They attempt to relitigate many issues which have already been resolved against them and in which the avenues of appeal have been exhausted. Indeed, respondents argue at length that this court must reverse the judgment entered in the Morgan County Case because they were denied a fair trial before an impartial judge. As Judge Brimmer of the United States District Court for the District of Wyoming aptly observed in enjoining Winslow's *pro se* activities, "Winslow refuses to give up a lost cause, and persists in instituting improper litigation in an attempt to abuse the court system and frustrate his adversaries." *Winslow v. Williams*, No. 92–CV–0028–B (D.Wyo. May 20, 1992).

In addition, the documents filed by respondents evince a primary concern with matters of complete irrelevance to this proceeding and contain spirited, though groundless, assertions of corruption and criminal conduct by, among others, the Governor of Colorado, the individual members of this court, the Attorney General of Colorado, numerous county, state, and federal district court judges, and several attorneys who represent or have represented interests contrary to respondents'.

In short, the facts before us firmly establish that respondents have pressed claims in state courts which previously have been adjudicated as lacking merit, and that their wholesale assault against judges, public officials, lawyers, and others who are perceived as opposing respondents in their effort to secure a rather unusual notion of "justice," has exacted and continues to exact a serious strain on the judicial resources of this state. Accordingly, the primary question before us concerns the appropriate remedy which this court should institute in order to minimize respondents' interference with state judicial processes.

II

■ "Every person has an undisputed right of access to the Colorado courts of justice." *People v. Dunlap*, 623 P.2d 408, 410 (Colo.1981). This right is not, however, without limits: "The right of self-representation in civil suits must in a proper case yield to the principle that 'right and justice should be administered without sale, denial or delay.'" *Id.* (quoting *Colo. Const.* art. II, sec. 6). We have consistently held that the principle that "right and justice should be administered without sale, denial or delay," *id.*, is imperiled when a party appearing *pro se* pursues myriad claims without regard to relevant rules of procedural and substantive law. This conclusion follows from recognition of the fact that opposing litigants must bear the expense of defending against meritless claims, and citizens in general suffer the hardships brought about by increased court costs, crowded dockets, and the unreasonable delay and confusion that accompany a disruption of proper judicial administration. *See Board of County Comm'rs of Morgan County v. Winslow*,

706 P.2d 792 (Colo.1985); *Board of County Comm'rs for the County of Weld v. Howard*, 640 P.2d 1128 (Colo.), *appeal dismissed and cert. denied*, 456 U.S. 968, 102 S.Ct. 2228, 72 L.Ed.2d 841 (1982); *Dunlap*, 623 P.2d at 411; *Board of County Comm'rs for the County of Boulder v. Barday*, 197 Colo. 519, 594 P.2d 1057 (1979); *People v. Spencer*, 185 Colo. 377, 524 P.2d 1084 (1974); and *Shotkin v. Kaplan*, 116 Colo. 295, 180 P.2d 1021 (1947).

■ Under such circumstances, "[t]his court has both the duty and the power to protect courts, citizens and opposing parties from the deleterious impact of repetitive, unfounded *pro se* litigation," *Dunlap*, 623 P.2d at 410, and on several occasions we have deemed it necessary to enjoin an individual from proceeding *pro se* as a plaintiff in any present or future litigation in the state courts of Colorado. *See Winslow*, 706 P.2d at 795; *Board of Cty. Comm'rs for the Cty. of Weld v. Howard*, 640 P.2d 1128 (Colo.1982); *People v. Dunlap*, 623 P.2d 408 (Colo.1981); *Board of County Comm'rs for the County of Boulder v. Barday*, 197 Colo. 519, 594 P.2d 1057 (1979); *People v. Spencer*, 185 Colo. 377, 524 P.2d 1084 (1974); and *Shotkin v. Kaplan*, 116 Colo. 295, 180 P.2d 1021 (1947).

> The common thread running through these opinions is that a litigant's right of access to the courts must be balanced against and, in a proper case, must yield to the interests of other litigants and of the public in general in protecting judicial resources from the deleterious impact of repetitious, baseless *pro se* litigation.

*Winslow*, 706 P.2d at 794.

Respondents' conduct here is not unlike the conduct proscribed in the cases cited above. The only significant distinction between those cases and the present one is that here, respondents' interference with efficient judicial processes has been much more acute. Initiating 162 separate legal proceedings, most of which have been dismissed for want of legal merit, is, by any measure, an abuse of the judicial system which cannot be condoned. Respondents' actions clearly evince the fact that either they seek to use judicial processes in order to harass and disrupt the lives of their adversaries or that they are in desperate need of the assistance of an attorney to help them formulate and present their grievances. Either way, permitting respondents to appear *pro se* in advancing claims for affirmative relief would neither benefit them, nor those who are the objects of their charges, the judicial system, or the public as a whole. Respondents' constant and duplicitous *pro se* complaints, counter-claims, cross-claims, third-party claims, and appeals have resulted in an unjustifiable burden on the judicial process and are contrary to the public interest.

### III

Accordingly, respondents are hereby enjoined from appearing *pro se* in any state court and from further appearing *pro se* in any state court action now pending in which they seek affirmative relief.[2] With respect to cases now pending, respondents are ordered to arrange for the appearance of legal counsel authorized to practice law in the courts of this state within forty-five days from the issuance of this opinion. In the event that respondents fail to enlist the aid of counsel, respondents' requests for affirmative relief shall be dismissed with prejudice.

SCOTT, J., concurs.

Justice SCOTT concurring:

I join the court's opinion and concur in its judgment. I write separately to note that the Winslows will greatly benefit from the advice and counsel of an attorney. What we do today is to simply require the Winslows to obtain the assistance of legal counsel before they again approach the Colorado courts to seek redress through actions they have initiated, nothing more and nothing less. So long as the Winslows

---

**2.** Respondents are enjoined only from appearing *pro se* as a proponent of any claim (i.e., as a plaintiff, third-party claimant, cross-claimant, or counter-claimant), they are free to appear *pro se* in any state court in their own *defense*.

retain an attorney "to help them formulate and present their grievances," maj op. at 924, the doors of our courtrooms are open to them and, as is guaranteed by our constitution to every other citizen, "access to the Colorado courts of justice" is not denied.[1]

---

1. The filings before us indicate the Winslows were represented by counsel of their choosing at one time or another, however, the record does not reveal the nature of that representation. By our holding today we are not "more devoted to 'order' than to justice"; to the contrary, we assume competent counsel is available to the Winslows and expect that such attorney's advice and counsel will be sought.