S96A0125. HOWARD v. SHARPE.
(470 SE2d 678)

HUNSTEIN, Justice.

We granted Edgar Howard's pro se application for a certificate of probable cause to examine the propriety of the sanctions imposed upon him by the habeas court following the denial of his petition for habeas corpus relief. Based on our conclusion that the sanctions were appropriate, we affirm.

Howard, an inmate, filed a petition for habeas corpus and other pleadings in the Superior Court of Macon County.[1] The habeas court determined that Howard's petition contained no cognizable claims and upon motion by Warden Sharpe, assessed attorney fees and costs against Howard pursuant to OCGA § 9-15-14 (b). Presented with a habeas petition that was successive, a concurrently filed mandamus which was non-meritorious, and with a litigant who had previously filed forty (40) civil lawsuits[2] as well as two meritless bar grievances, the habeas court sought to impose sanctions that would discourage Howard from filing more meaningless actions. Accordingly, in addi-

---

[4] Glenn Lipscomb was already aware in April 1992 that his parcel consisted of only 19.09 acres.

[1] Howard was convicted of child molestation and aggravated child molestation and his conviction was affirmed by the Court of Appeals. See *Howard v. State*, 200 Ga. App. 188 (407 SE2d 769) (1991).

[2] For example, in *Howard v. Parkman*, 210 Ga. App. 716 (437 SE2d 483) (1993), wherein Howard claimed he had been denied meaningful access to the courts, the Georgia Court of Appeals noted that at the time of the appeal Howard was a party in sixteen cases in the Superior Court of DeKalb County, a party in a case in the District Court for the Northern District of Georgia, and had appealed five cases to the Court of Appeals.

tion to the monetary penalty, the habeas court enjoined Howard from filing any lawsuits in forma pauperis unless Howard first obtains approval of the habeas judge and certifies that the claims raised are novel;[3] from filing State Bar grievances without prior approval of the habeas court; and from acting as a "jail-house lawyer," i.e., assisting other inmates in legal matters.

1. Prisoner access to the courts in order to challenge unlawful convictions and to seek redress for violations of constitutional rights cannot be unjustifiably denied or obstructed. *Giles v. Ford*, 258 Ga. 245 (1) (368 SE2d 318) (1988). In this State, meaningful access to the courts includes the right to contest the legality of a conviction or the constitutionality of prison conditions through habeas corpus proceedings, OCGA § 9-14-40 et seq., and the right to meaningful communications with the courts. See *Portis v. Evans*, 249 Ga. 396 (2) (291 SE2d 511) (1982) (adequate law library or adequate legal assistance must be provided to prison inmates). But, compare *State v. Davis*, 246 Ga. 200 (269 SE2d 461) (1980) (meaningful access does not require funds or appointed counsel to indigent death row habeas petitioners). Those regulations and restrictions which bar adequate, effective and meaningful access to the courts are unconstitutional. *Bounds v. Smith*, 430 U. S. 817 (97 SC 1491, 52 LE2d 72) (1977); *Procunier v. Martinez*, 416 U. S. 396, 419 (II) (94 SC 1800, 40 LE2d 224) (1974); *Johnson v. Avery*, 393 U. S. 483, 490 (89 SC 747, 21 LE2d 718) (1969).

As recognized by the federal courts, we too acknowledge the problems created by inmates who generate frivolous litigation and the dilemma courts have faced in crafting restrictions against those prisoners who take advantage of their unique situation to abuse the judicial process. See, e.g., *Procup v. Strickland*, 792 F2d 1069 (11th Cir. 1986) (prisoner who had filed numerous frivolous lawsuits held not deprived of access to the courts by district court order permanently enjoining him from filing any additional pleadings unless submitted by an attorney).[4] Because of the constitutional ramifications to any abridgement of an individual's right to access, see *Bounds v. Smith*, supra, and given the expanded view of the right to file for habeas

---

[3] Although the order specifies that the "undersigned judge determine, on a case-by-case basis, whether [Howard] is in fact unable to prepay costs and fees; and whether said lawsuit is frivolous and malicious, i.e., whether it appears that the claim is without arguable merit in both law and fact, or that the claim is repetitive, or that the claim was filed maliciously," we interpret this order to mean that any judge of that court can make the determination whether the lawsuit meets the criteria set forth in the order.

[4] As noted in *Procup*, supra at 1071:
The prisoner litigant may possess several distinct advantages over the ordinary litigant: time to draft multiple and prolonged pleadings; ability to proceed *in forma pauperis* and thus escape any financial obstacles confronting the usual litigant; and availability of free materials which the state must provide the prisoner . . . . As a result, there is virtually no cost to a prisoner's filing repeated, frivolous lawsuits.

corpus relief set forth in OCGA § 9-14-40 and *Giles v. Ford*, supra, restrictions on an inmate's right of access to the courts must be drawn so as to avoid unjustifiably obstructing access to the courts and clearly warranted by the particular circumstances of each case.

Looking to the case before us, Howard's situation shows a pattern of filing collateral grievances related to the prison and court systems in general, but unrelated to a review of his criminal convictions or a violation of constitutional rights. Thus, the evidence in this case supports the habeas court's finding that Howard has exhibited a pattern of filing frivolous lawsuits. The habeas court fashioned an order, narrowly drawn with reasonable restrictions to prevent Howard from flooding the court with repeated, frivolous filings, while safeguarding Howard's meaningful access to the courts. We therefore conclude that the habeas court did not err in imposing the sanctions at issue.[5]

2. The rulings of the habeas court on all other grounds are affirmed for the reasons stated in the court's order.

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Sears, J., who dissent.*

BENHAM, Chief Justice, dissenting.

I dissent from the majority's opinion for two reasons: I believe that the habeas court's sanctions are overly broad, and the court's mandate that Howard obtain permission from it prior to seeking future relief is an illegal attempt to retain jurisdiction.

1. The habeas court's prohibitions against Howard "acting as a 'jailhouse lawyer'" and "giv[ing] legal assistance to any other inmates" are overly broad. The habeas court failed to specify what actions entail "acting as a 'jailhouse lawyer,'" and also failed to state what conduct is encompassed in the meaning of "giv[ing] legal assistance." Is giving an address of a particular court acting as a jailhouse lawyer or rendering legal assistance? Is giving the proper spelling of a legal term acting as a jailhouse lawyer or rendering legal assistance?

Further, I believe that the habeas court's broad prohibition against acting as a jailhouse lawyer and rendering legal assistance to others presents a potential question of whether Howard's freedom of speech and freedom of association rights are being violated. See generally *Bullock v. City of Dallas*, 248 Ga. 164 (281 SE2d 613) (1981); *Aycock v. Police Committee of the Bd. of Aldermen*, 133 Ga. App. 883 (212 SE2d 456) (1975). The habeas court has not set forth sufficient reasons to justify its broad and potentially constitutionally inva-

---

[5] Nor do we perceive any problem with the ruling that Howard is prohibited from assisting other inmates in preparing legal petitions; this rule does not deprive other prisoners from access to the courts, it merely protects the inmates and courts alike from an unskilled "jailhouse lawyer."

sive sanctions.

2. I also believe that the habeas court's mandate that Howard obtain permission from it prior to seeking relief in any other action is an illegal attempt to retain jurisdiction. Compare *Heard v. Vegas*, 233 Ga. 911 (213 SE2d 873) (1975) ("a court cannot attempt to retain jurisdiction [in a child custody case] after its final order"); compare also *Anthony v. Anthony*, 212 Ga. 356 (92 SE2d 857) (1956). Although the majority has determined that the habeas court's order mandates that Howard obtain permission from any judge of the court, the habeas court's express ruling dictates that Howard seek permission from the undersigned habeas court judge when attempting to file a claim in forma pauperis. This mandate is certainly overreaching and is not narrowly drawn; instead, I believe that the habeas court's restrictions infringe upon Howard's right to access to the courts (see *Bounds v. Smith*, 430 U. S. 817 (97 SC 1491, 52 LE2d 72) (1977) and *Giles v. Ford*, 258 Ga. 245 (1) (368 SE2d 318) (1988)) and, contrary to the majority's conclusions, are not warranted by the particular circumstances of this case. The mandate ignores the statutorily created safeguards which are already in place to address the problem of frivolous suits being filed. OCGA § 9-15-2 (d) gives the superior court authority to deny filing of a pleading to a party seeking in forma pauperis status. Under this Code provision, the court in which Howard is attempting to file a claim may deny filing of the claim "if the pleading shows on its face such a complete absence of any justiciable issue of law or fact that the court could not reasonably grant any relief against any party named therein." *Yizar v. Ault*, 265 Ga. 708 (462 SE2d 141) (1995). There are also procedural safeguards in place for parties who are not seeking in forma pauperis status, but file pleadings and pay the costs of such filings. For example, under OCGA § 9-15-14 (a) & (b), a party who has been found by the court to have filed a frivolous pleading may be ordered to pay the attorney fees and costs of defending the pleading or action.

For the foregoing reasons, I would affirm the denial of Howard's petition for habeas corpus relief, but would strike the portion of the judgment imposing sanctions and would remand to the habeas court for reconsideration of the issue of sanctions. Therefore, I respectfully dissent.

I am authorized to state that Justice Sears joins in Division 1 of this dissent.

SEARS, Justice, dissenting.

I join in the Chief Justice's dissent to the extent it concludes that the habeas court's order violates Howard's freedom of speech and freedom of association rights, and therefore is overbroad.

Decided May 28, 1996 —
Reconsideration denied June 14, 1996.

Edgar W. Howard, *pro se.*

Michael J. Bowers, Attorney General, John C. Jones, Senior Attorney General, Rachelle L. Strausner, Assistant Attorney General, for appellee.