A97A0390. MORROW v. VINEVILLE UNITED METHODIST
CHURCH et al.
A97A0391. MORROW v. WOOD et al.
(489 SE2d 310)

RUFFIN, Judge.

Jeannine Morrow appeals pro se from several orders entered by the Bibb County Superior Court in these two companion cases. For reasons which follow, we affirm in part and reverse in part.

Morrow is one of 11 beneficiaries to a trust formed by Mabel Anderson Coggin, who died May 31, 1990. The record reveals that in her will, Coggin bequeathed to the Vineville United Methodist Church Foundation ("the Church") a sum equal to ten percent of her gross estate as finally determined for federal estate tax purposes. Except for a few other minor personal property bequests, Coggin directed that the remainder of her estate be placed into the trust. The will further appointed Trust Company Bank of Middle Georgia ("Trust Company") as executor of Coggin's estate.

To satisfy the Church's bequest, Trust Company, as executor, transferred to the Church a percentage of the estate's interest in Burgess Washington Clay, Ltd. ("BWC"). The record shows that the Church then sold that interest to several BWC partners. Trust Company also sold the estate's remaining interest in BWC to various BWC partners.

Claiming that Trust Company had breached its fiduciary duty to the estate, transferred the estate's interest in BWC without consent, undervalued that interest, and overpaid the Church, Morrow and the other trust beneficiaries sued Trust Company, as well as BWC, Malcolm Burgess, Jr., and other unnamed partners in BWC (collectively "the Burgess defendants"). The trust beneficiaries later added the Church as a defendant on the theory of money had and received.[1] This suit forms the basis of Case No. A97A0390. In a separate suit, which resulted in Case No. A97A0391, the trust beneficiaries sued the estate's attorneys for negligence, professional malpractice, and breach of fiduciary duty.

On October 19, 1994, the trial court granted summary judgment to the Burgess defendants. After further litigation and discovery, the remaining parties submitted to mediation on July 14, 1995. The Church and all trust beneficiaries except Morrow ("the appellee-trust beneficiaries") contend that a settlement agreement was reached during the mediation, pursuant to which the Church agreed to pay the estate $121,430.17 in exchange for a dismissal and release from

---

[1] The record shows that the trust beneficiaries added the Vineville United Methodist Church and the Vineville United Methodist Church Foundation to the suit. We will refer to these two entities collectively as "the Church."

suit. No agreements were reached with the other defendants.

Following the mediation, Morrow disputed the settlement with the Church and refused to sign the release prepared by her attorneys. The appellee-trust beneficiaries signed the agreement. Morrow's attorneys subsequently withdrew as her counsel, and the Church moved to enforce the settlement against her. After an evidentiary hearing, the trial court granted the Church's motion and enforced the Mutual Release and Settlement Agreement drafted by counsel.

At the time of the hearing, the appellee-trust beneficiaries also moved to appoint a "virtual representative" to represent the entire group of beneficiaries, including Morrow. To support their motion, the appellee-trust beneficiaries argued that Morrow's decisions to renege on the Church settlement and ignore the other beneficiaries' wishes with respect to litigation strategy had impeded progress on the cases. According to these beneficiaries, "Morrow is so angry and emotionally involved in these suits that she is not capable of making a rational decision on these matters, and would prefer to stall indefinitely if matters do not proceed her way." In their view, appointing a virtual representative would protect the interests of all beneficiaries, including Morrow, and enable the parties to arbitrate the cases, as desired by the other beneficiaries. The trial court granted the motion, appointed David E. Morrow, Sr. as a "virtual representative" of all beneficiaries, and dismissed the other beneficiaries from the cases.

Morrow appeals, claiming that the trial court erred in several respects. In Case No. A97A0390, she enumerates as error (1) the trial court's order appointing David E. Morrow, Sr. as "virtual representative" of the trust beneficiaries; (2) the trial court's order enforcing the settlement with the Church; and (3) the trial court's October 19, 1994 order granting summary judgment to the Burgess defendants. The enumerated errors in Case No. A97A0391 revolve solely around the virtual representation order, which was also entered in that case.

The parties have filed several motions, which we will resolve before addressing the merits of these appeals.

The appellee-trust beneficiaries have moved to recuse Presiding Judge Birdsong from these appeals. This recusal motion, however, is moot. As shown by a November 14, 1996 order of this Court, Presiding Judge Birdsong is not participating in the appeals. Accordingly, the appellee-trust beneficiaries' motion for recusal is denied. Morrow's related motion for sanctions is also denied.

In addition, Morrow has moved (1) to dismiss the appellee-trust beneficiaries as improper parties to the appeals and (2) to restyle the appeals so that those beneficiaries are not designated as appellees. Under OCGA § 5-6-37, "[a]ll parties to the proceedings in the lower court shall be parties on appeal. . . ." See also *Marsden v. Southeast-*

*ern Sash & Door Co.*, 193 Ga. App. 597 (1) (388 SE2d 730) (1989) (physical precedent only). The appellee-trust beneficiaries were parties to the trial court orders at issue here. Accordingly, they are proper parties to this appeal. OCGA § 5-6-37.

Furthermore, it appears that the appellee-trust beneficiaries' interests are primarily adverse to Morrow's interests in the appeals. The record shows that only Morrow opposed the Church settlement and that the appellee-trust beneficiaries moved the trial court to appoint a virtual representative, the two primary issues in these appeals. We conclude, therefore, that the appellee-trust beneficiaries were properly designated as appellees. Accordingly, Morrow's motions to dismiss the appellee-trust beneficiaries and to restyle the appeals are denied.

### Case No. A97A0390

1. Morrow first argues that the trial court erred in appointing a "virtual representative" to represent all trust beneficiaries in the suit. We agree.

Although recognized by Georgia courts, the doctrine of virtual representation has received only limited discussion, and no Georgia decisions applying the doctrine are factually similar to this case. The Supreme Court of Georgia has described the doctrine as a method for encouraging the free alienation of property. *Leathers v. McClain*, 255 Ga. 378, 379 (338 SE2d 666) (1986). In *Cooney v. Walton*, 151 Ga. 195, 208 (106 SE 167) (1921), for example, the Court found that an individual holding a remainder in a life estate could virtually represent and bind his unborn children in a suit regarding the sale of the property. The Court noted that "[i]n cases where titles are complicated by limitations and contingencies, both private and public interests may, under some circumstances, require the sale of the involved real estate, even as against persons not in being. In such a situation, courts are sometimes impelled to act by expediency and practical necessity, binding the interests of person [sic] not in being by recourse to the principle of representation." *Cooney*, supra at 200.

Georgia courts have further described the doctrine as an "aid to securing justice, preventing hardship, inconvenience, and injustice." *Webb & Martin, Inc. v. Anderson-McGriff Hardware Co.*, 188 Ga. 291, 295 (3 SE2d 882) (1939). Latching onto this language, the appellee-trust beneficiaries argue that justice required the trial court to take action in the face of Morrow's "intransigence." They also claim that a representative can adequately protect her rights because all of the beneficiaries share a common interest in the suits.

To support their position, the appellee-trust beneficiaries cite numerous cases from other jurisdictions that explain the virtual

representation doctrine. The cited cases, however, do not address whether a virtual representative may be appointed to silence opposition and dissension within a group of party plaintiffs. On the contrary, these cases involve virtual representation where, as in *Cooney*, all potential parties cannot be or simply were not joined in a suit. See *Bowles v. Superior Court*, 283 P2d 704 (Ca. 1955); *In re Estate of Putignano*, 368 NYS2d 420 (1975); *Pittman v. Barker*, 452 SE2d 326 (N.C. App. 1995). We have found, and the appellees have cited, no authority applying the doctrine of virtual representation to prevent a named plaintiff from further direct participation in a suit.

"The constitution of this state guarantees to all persons due process of law and unfettered access to the courts of this state. [Cit.] These fundamental constitutional rights require that every party to a lawsuit . . . be afforded the opportunity to be heard and to present his claim or defense, i.e., to have his day in court. [Cits.]" *Hart v. Owens-Illinois, Inc.*, 165 Ga. App. 681, 682 (302 SE2d 701) (1983). The trial court's virtual representation ruling effectively shuts Morrow out of litigation that she, along with the other trust beneficiaries, commenced in her individual and representative capacities. Similarities between Morrow's interests and the representative's interests do not justify the virtual representation order. Furthermore, we note that Morrow's view of this case, and in particular its potential judgment value, differs greatly from that of the appellee-trust beneficiaries, thus undermining the claimed protection offered by the "virtual representative." We find that the trial court's order denies Morrow her day in court, thus infringing upon her due process rights. See *Hart*, supra.

The doctrine of virtual representation cannot be used to foreclose a party plaintiff's access to the courts. We also reject Trust Company's argument that the trial court's equitable power to control the litigation and parties appearing before it supports the ruling. "Discretion in regulating and controlling the business of the court is necessarily confided to the judge." (Citations and punctuation omitted.) *Ace Bonding Co. v. State*, 180 Ga. App. 261, 262 (1) (349 SE2d 15) (1986). That discretion, however, " 'is subject to the proviso that in so doing a judge does not take away or abridge any right of a party under the law. (Cit.)' [Cit.]" Id.

Justice and equity do not allow the trial court to force Morrow out of this litigation simply because the appellee-trust beneficiaries find working with her difficult. Accordingly, the trial court's order appointing David E. Morrow, Sr. as the "virtual representative" of the trust beneficiaries and dismissing all other beneficiaries from the suit is reversed.

2. Morrow further argues that the trial court erroneously enforced the settlement between the trust beneficiaries and the

Church. We disagree.

Following a non-jury trial on the motion to enforce settlement, the trial court entered findings of fact and conclusions of law pursuant to OCGA § 9-11-52 (a). Those factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52 (a); *Tranakos v. Miller*, 220 Ga. App. 829, 832 (1) (470 SE2d 440) (1996). Under the "clearly erroneous" test, we will not disturb the trial court's factual findings if there is any evidence to sustain them. *Hanson v. Kent*, 263 Ga. 124 (2) (428 SE2d 785) (1993). Furthermore, we must construe the evidence to uphold the judgment. *Exxon Corp. v. Butler*, 173 Ga. App. 146, 147 (325 SE2d 806) (1984).

At the evidentiary hearing, the Church presented testimony from Geoffrey Cederholm, who served as counsel for all trust beneficiaries (including Morrow) at the July 14, 1995 mediation.[2] Cederholm testified that Morrow and nine of the other ten beneficiaries attended the mediation. He further testified that before the mediation, the beneficiaries sent letters to all defense counsel indicating that their counsel did not "have the authority to offer or accept a settlement in these cases without the expressed written consent to all the terms from all the plaintiffs."

As the mediation began, Cederholm and the attorney for the Church discussed the possibility of settlement. Cederholm then met with his clients, relayed the Church's interest in settling the case, and communicated an offer from the Church. The beneficiaries rejected that offer and discussed reasonable counteroffers. Cederholm continued to negotiate with the Church, which eventually offered to pay $121,430.17 for a release and dismissal from the suit. Cederholm met again with his clients, discussed their options, and gave his opinion that the Church's settlement offer was reasonable.

Cederholm testified that the beneficiaries, including Morrow, ultimately agreed to accept the Church's offer and gave Cederholm actual authority to communicate that acceptance to the Church. Counsel for the Church then met with the beneficiaries, expressed his pleasure that they had reached a settlement, and shook hands with each beneficiary. The beneficiaries expressed no dissatisfaction regarding the settlement during or immediately after the meeting with the Church's attorney.

Four days later, Cederholm wrote counsel for the Church, confirming the settlement as follows: "In exchange for the payment of

---

[2] After Morrow refused to sign the settlement agreement with the Church, Cederholm withdrew as her counsel. He still represents the ten appellee-trust beneficiaries.

$121,430.17, the Plaintiffs will dismiss with prejudice their claims against the church, and both sides will enter into a release agreement." Counsel for the Church responded in writing that Cederholm's letter accurately set forth the settlement agreement. Cederholm subsequently drafted a settlement release, which was forwarded to counsel for the Church, as well as each trust beneficiary. Cederholm testified that in addition to the typical "boilerplate" language, the written agreement provided that "the church will pay the plaintiff[s], will pay, in this case, the Estate [$]121,430.17 in exchange for a mutual releases [sic] and a dismissal with prejudice." After several revisions to address specific concerns raised by Morrow and other beneficiaries, the agreement was finalized and signed by all but Morrow.

In opposition, Morrow presented the testimony of her father, one of the trust beneficiaries, who stated that he did not recall any discussions during the mediation about releasing employees of the Church. The record shows, however, that Morrow's father signed the settlement agreement, which releases "the Church and each of its employees, successors and assigns." Morrow also testified on her own behalf that the beneficiaries only "tentatively" agreed to release the Church for a dollar amount and that "none of the other information . . . [in the] written agreement was presented to [the beneficiaries] or the full ramifications of it discussed with [them] on the day of that mediation." She conceded, however, that one reason she refused to sign the settlement agreement was that no settlement had been reached with the other defendants in the case.

Based upon the evidence presented, the trial court found that during the mediation, the beneficiaries withdrew their requirement that they expressly consent in writing to each settlement term and accepted the Church's settlement offer. The court further found that the final draft of the written settlement agreement embodies the terms of the settlement offered and accepted at the mediation. In light of these factual findings, the court concluded that the essential terms of the agreement were unambiguous and complete and that the written agreement accurately records these essential terms. Accordingly, the trial court enforced the written agreement and dismissed with prejudice the beneficiaries' claims against the Church.

Construing the evidence to uphold the trial court's judgment and applying the "any evidence" standard, we find sufficient evidence to support the judgment. Cederholm testified that the trust beneficiaries, including Morrow, orally authorized him to accept the Church's settlement offer, whereby the Church would pay a stated sum into the estate in exchange for a full release and dismissal of claims. When the Church's attorney subsequently met with the beneficiaries to thank them for entering the settlement, they raised no

objection. Attorneys for the beneficiaries and the Church then exchanged letters memorializing the terms of the agreement. This evidence supports the trial court's findings that the beneficiaries withdrew their requirement for express written consent and entered into a binding settlement agreement. See *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (2) (308 SE2d 544) (1983) ("Ordinarily, for an attorney to bind his client to a settlement agreement where there is a dispute as to terms, the agreement must be in writing. [Cit.] . . . However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.").

We similarly find no error in the trial court's decision enforcing the written settlement release. The essential terms of the settlement were agreed upon at the mediation conference and confirmed by letters of counsel. The final written release simply memorialized those terms. The evidence authorized the trial court to find that the final draft of the release accurately reflected the terms of the settlement and the intention of the parties. The evidence further supported the trial court's conclusion that concerns raised by Morrow regarding the form of the release were addressed in the final version. Accordingly, the trial court did not err in enforcing the written release.

3. In her final enumeration, Morrow claims that summary judgment should not have been granted to the Burgess defendants because Judge Bryant Culpepper entered the summary judgment order after recusing himself. Morrow does not challenge the summary judgment ruling on any other grounds.

The record shows that Judge Culpepper and the other superior court judges in the Macon Judicial Circuit decided, on their own motion, to recuse themselves after the trust beneficiaries initiated their separate suit against the estate's attorneys because those attorneys are "members of the local Bar, who in [their] professional capacities work closely with the Judges of said court. . . ." Although dated October 14, 1994, the trial judges' "Motion and Order" regarding recusal was not entered by the clerk's office until November 17, 1994. Judge Culpepper's summary judgment order in favor of the Burgess defendants was signed and entered on October 19, 1994.

Morrow argues that Uniform Superior Court Rule ("USCR") 25 required Judge Culpepper to cease all action in this case on October 14, 1994, the date shown on the recusal "Motion and Order." Pursuant to USCR 25.3, "[w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination . . . whether recusal would be warranted." The clear purpose of this provision is to

halt a trial judge's work on a case following an allegation of bias for or prejudice against a party until that allegation can be resolved. USCR 25.3.

We find that the superior court judges moved to recuse themselves from this case on October 14, 1994, before Judge Culpepper issued his summary judgment ruling. That motion, and the eventual order of recusal, however, did not result from allegations of bias or prejudice regarding the parties *in this case*. Rather, the motion and order stemmed from possible judicial partiality in the trust beneficiaries' companion case against the estate's attorneys. In light of the clear purpose of USCR 25.3, we do not find that the superior court judges' October 14, 1994 motion for recusal required Judge Culpepper to cease all activity in this case, which involved no allegations of bias or prejudice.

Judge Culpepper's power to rule in this case extended until November 17, 1994, when the order of recusal was entered by the clerk's office and became effective. See OCGA § 9-11-58 (b); *In re Smith*, 211 Ga. App. 493, 495 (1) (439 SE2d 725) (1993) ("The scope of OCGA § 9-11-58 (b) appears to have been extended by implication beyond 'judgments' to include orders of any kind. [Cits.]"). Accordingly, this enumeration of error has no merit.

### Case No. A97A0391

Morrow's enumerations of error in Case No. A97A0391 revolve around the trial court's virtual representation order, which was entered in both of the companion cases. As discussed in Division 1 of Case No. A97A0390, the virtual representation doctrine does not support the trial court's decision to foreclose Morrow's participation in these suits. For the reasons stated in that division, the trial court's order appointing David E. Morrow, Sr. as the "virtual representative" of the trust beneficiaries and dismissing all other beneficiaries from this suit is reversed.

*Judgment affirmed in part and reversed in part in Case No. A97A0390. Judgment reversed in Case No. A97A0391. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 6, 1997 —
RECONSIDERATION DENIED JULY 15, 1997 — ▮

L. Jeannine Morrow, *pro se.*

*Glass, McCullough, Sherrill & Harrold, Geoffrey H. Cederholm, Martin, Snow, Grant & Napier, John T. McGoldrick, Jr., Jones, Cork & Miller, Thomas C. James III, King & Spalding, Frank C. Jones,*

*O'Neal, Brown & Sizemore, Lamar W. Sizemore, Jr.*, for Vineville United Methodist Church and Wood.