A98A1631, A98A1689. IN RE LAWSUITS OF ANTHONY J. CARTER (two cases).
(510 SE2d 91)

BEASLEY, Judge.

Anthony J. Carter appealed from an unnumbered order of the superior court entered March 10 directing that the clerk of court "shall not file any law suit brought by, or on behalf of Anthony J. Carter unless same is signed by a member in good standing of the State Bar of Georgia who shall certify that the complaint sets our [sic] a prima facie case upon which some relief could be granted."

Carter filed a notice of appeal on April 3, which appeal was docketed as Case No. A98A1631. He filed an application for permission to appeal on April 6, 1998, which was granted on April 14 pursuant to OCGA § 5-6-35 (j) because Carter had the right to appeal from the order adversely affecting his attempts to file civil complaints. He filed no notice of appeal after our order but instead amended his original notice of appeal on April 16 to designate additional parts of the record to be transmitted to this Court. The amendment erroneously generated a new case number (A98A1689) in this Court. Since Carter had a right to appeal, Case No. A98A1689 is dismissed, as it purports to be the appeal granted pursuant to the unnecessary application. The records in both files are consolidated for consideration in Case No. A98A1631.

Two undated pro se complaints are contained in the record.[1] We do not know whether Carter attempted to file them before or after the court's March 10 order, although one has an affidavit signed March 9. They are unnumbered and bear no file stamp, indicating the clerk of court refused to file them.[2] The court's order, addressed to the clerk, states that Carter files cases "solely for the purpose of

---

[1] "Complaint on Excessive Levy, Failure to Levy on Items Specified, Negligence, False Affidavit, Malice, Conspiracy for Promotion" against two deputy sheriffs individually; "Complaint on Violation of Constitutional Rights to Pro Se and File Motions and Civil Cases" against the clerk of the superior court and the court and the county.

[2] Representations made by Carter in his brief with respect to matters outside the record cannot be accepted. *Leatherwood v. State*, 212 Ga. App. 342 (1) (a) (441 SE2d 813) (1994).

harassment." This statement of fact is based on litigation history of which the court took judicial notice and does not suggest any review of the two attempted complaints. In support of its finding, the court described 17 pro se lawsuits filed against 29 separate defendants since 1989 as being voluminous and frivolous and having warranted no relief or recovery. The order is signed with approval also by the chief judge of the circuit.

As error, Carter enumerates first that the trial court deprived him of his right contained in the state constitution, Ga. Const., Art. I, Sec. I, Par. XII, to prosecute his cause pro se in any of the state's courts. He secondly enumerates as error the entry of the order in violation of his state constitutional right to due process of law,[3] namely, the right to notice and an opportunity to be heard before entry of such an order. Implicated in both is the right of access to the courts.

Carter's claims are responded to only by a brief on behalf of Fayette County, a named defendant in one of the suits, which brief attaches as exhibits two orders. Since they are not part of the record, which they might have been by designation under OCGA § 5-6-42 after appropriate trial court order making them part of the record, we cannot consider them or the recitation of facts concerning them.[4]

1. As stated in paragraph 12 of the Georgia Bill of Rights, a person has a right to represent himself or herself in court. "This provision was 'primarily intended to guarantee the right of self-representation in the courts of this State. . . .' [Cit.]"[5] Its purpose is to provide a right of choice between self-representation and representation by counsel.[6] Secondly, the very first provision of the Bill of Rights in " '[t]he constitution of this state guarantees to all persons due process of law and unfettered access to the courts of this state. (Cit.) These fundamental constitutional rights require that every party to a lawsuit . . . be afforded the opportunity to be heard and to present his claim or defense, i.e., to have his day in court. (Cits.)' "[7] But like all rights, responsibilities are attached and limits are imposed. No person is free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose.[8]

---

[3] Ga. Const., Art. I, Sec. I, Par. I.

[4] See OCGA § 5-6-41 (f); *Leatherwood v. State*, supra.

[5] *Dobbins v. Dobbins*, 234 Ga. 347 (1) (216 SE2d 102) (1975).

[6] *State of Ga. v. Moseley*, 263 Ga. 680, 682 (3) (436 SE2d 632) (1993); *Nelms v. Georgian Manor Condo. Assn.*, 253 Ga. 410, 413 (3) (321 SE2d 330) (1984).

[7] *Morrow v. Vineville United Methodist Church*, 227 Ga. App. 313, 316 (1) (489 SE2d 310) (1997), quoting *Hart v. Owens-Illinois, Inc.*, 165 Ga. App. 681, 682 (302 SE2d 701) (1983).

[8] See, e.g., *Jones v. Townsend*, 267 Ga. 489 (480 SE2d 24) (1997) (approving statutory procedures — OCGA §§ 42-12-4 through 42-12-9 — for curbing frivolous or malicious prisoner litigation and placing financial costs on prisoners); *Bd. of Commrs. of Morgan County v.*

On point also, since the trial court sought both to "preserve the orderly administration" of the court and to "protect the citizens from unfounded and harassing claims," no person is free to abuse the right by hauling other persons into court for the purpose of harassment. The legislature has provided a number of remedies for hapless defendants in such civil proceedings. Creation of the tort of abusive litigation is both a sword which may be called into use when such actions are initiated, continued or procured and a shield which stands as a threat to those who would offend the right of access maliciously and without substantial justification.[9]

Likewise, attorney fees and litigation expenses may be recovered against those who assert a claim, defense or other position completely lacking in a justiciable issue.[10] To guard against frivolous professional malpractice suits even before they are filed, statutory law requires that a plaintiff obtain and provide an expert affidavit with the complaint.[11] Claims which entail a defendant's right to free speech or right to redress of grievances must include a sworn verification by plaintiff and plaintiff's attorney, if there is one, that the claim is not interposed for an improper purpose.[12] Except in habeas corpus cases,[13] when an indigent person seeks to file a claim without payment of court costs and without an attorney (and thus without an attorney's verification), the complaint is subject to prefiling judicial scrutiny to ascertain whether it is so lacking in a justiciable issue that its filing should be denied.[14]

Even some habeas corpus cases are subject to prefiling judicial scrutiny, where a pattern of filing frivolous lawsuits is found.[15] And

---

*Winslow*, 862 P2d 921, 923-924 (II) (Colo. 1993) (court has duty and power to protect courts, citizens and opposing parties from repetitive, unfounded pro se litigation); *Urban v. United Nations*, 768 F2d 1497, 1499-1500 (III) (D.C. Cir. 1985) (court has obligation to protect and preserve sound and orderly administration of justice).

[9] OCGA §§ 51-7-80 through 51-7-85.

[10] OCGA § 9-15-14. See also OCGA § 9-15-15 (actions against judicial officers). Litigation expenses are awardable against *defendants* for bad faith, stubborn litigiousness or causing unnecessary trouble and expense. OCGA § 13-6-11.

[11] OCGA § 9-11-9.1. This differs from the instant requirement in that a court would not be qualified to make a medical judgment and thus must depend on an expert's affidavit, whereas a court is well-equipped to make a legal judgment and need not delegate that decision to a lawyer. We do note that although not applicable to pro se complaints, when a party is represented by an attorney, the attorney must sign the pleading and thereby certify that the pleading is not interposed for delay. OCGA § 9-11-11.

[12] OCGA § 9-11-11.1.

[13] *Giles v. Ford*, 258 Ga. 245 (368 SE2d 318) (1988).

[14] OCGA § 9-15-2 (d).

[15] *Howard v. Sharpe*, 266 Ga. 771 (470 SE2d 678) (1996) (order requiring approval of habeas judge and certification that claims were novel before inmate could file any future lawsuits in forma pauperis was reasonable restriction in light of past pattern of filing frivolous lawsuits).

in *Smith v. Adamson*,[16] the Court held that an order requiring future suits filed by a litigious pro se litigant to be approved by the judge and accompanied by two affidavits, one of which was her own sworn assurance of propriety, did not deprive her of meaningful access to the courts. These narrow court-fashioned restrictions, which incorporated judicial decision-making and thus provided access which was "adequate, effective and meaningful,"[17] passed constitutional tolerance. Of course, use of the contempt power to impose sanctions is also available.[18]

This non-exhaustive recitation illustrates permissible curbs on the right of access to the courts which is guaranteed by Georgia's Bill of Rights. Under the United States Constitution, access is regarded as a corollary of due process of law.[19] No less may be said of the first paragraph of the Georgia Constitution. If the entrance to the court is arbitrarily blocked by the court itself, one of the very purposes of the constitution, to "insure justice to all," fails of accomplishment.[20]

So it is that meaningful access to the courts must be scrupulously guarded, as it is a constitutional right universally respected where the rule of law governs. "Those regulations and restrictions which bar adequate, effective and meaningful access to the courts are unconstitutional. [Cits.]"[21] The measure taken by the court below, although directed to the clerk, in effect precluded lawsuits by Carter himself. It is not statutorily authorized, as are the foregoing instances of protection against abuse of the right of access, nor does it interpose judicial scrutiny, as do those illustrations which do not involve attorney signature or payment of costs, both of which requirements act as brakes.

Instead, it requires Carter to hire an attorney in order to gain access to the court for any claim, legitimate or not, and in effect delegates to that attorney, at least preliminarily, what should otherwise be the judicial task of determining frivolousness or maliciousness. It creates a conclusive presumption that, regardless of its content, a suit filed by Carter pro se constitutes harassment. So the order prejudges the case and denies process altogether, much less due process, unless Carter as plaintiff relinquishes his constitutional right to self-representation. In other words, it indiscriminately interdicts all suits by Carter when he seeks to invoke his right of self-

---

[16] 226 Ga. App. 698, 699-700 (3) (487 SE2d 386) (1997).
[17] *Howard*, supra at 772 (1).
[18] See *Urban v. United Nations*, supra at 1500.
[19] *Procunier v. Martinez*, 416 U. S. 396, 419 (94 SC 1800, 40 LE2d 224) (1974).
[20] Preamble, Constitution of the State of Georgia.
[21] *Howard v. Sharpe*, supra at 772 (1), citing three decisions of the United States Supreme Court. Although *Howard* applied *federal* constitutional law, so fundamental a concept would likewise be inherent in the state constitution's guarantee of due process.

representation.

Such a price is not justified, for as seen by the illustrations recited above, adequate remedy is provided for whoever is harassed by way of a lawsuit. The device fashioned by the court for application exclusively to Carter contravened constitutional bounds, because a restriction on the right of access "must be drawn so as to avoid unjustifiably obstructing access to the courts and [to be] clearly warranted by the particular circumstances of each case."[22]

The superior court in this case required any future suits to first pass through the crucible of an attorney's legal judgment[23] and required that the attorney, an officer of the court bound by the Code of Professional Responsibility, certify that the complaint set out a prima facie case. This condition compels Carter to incur the expense of hiring an attorney despite the constitutional right to represent himself. Although it is a relatively minor expense because it necessitates only a review of the complaint to assure that it is not frivolous, it eliminates the freedom to submit his complaint independently. True, he may choose the attorney, but the requirement bars access based on the strength of Carter's voice alone, although he may still represent himself to the fullest and may still file his complaints in his own name. But even though the purpose is to end the abuse which was experienced at Carter's hand, the restriction is overbroad. It, like the unlawful injunction in *Procup v. Strickland*,[24] absolves the court itself of responsibility to examine the suits for frivolity or maliciousness on a case-by-case basis.

For these reasons, the order must be vacated.

2. Further, the order is faulty because Carter was not given notice or an opportunity to be heard or to dispute the facts upon which it was grounded, before the affirmative action was taken to prohibit his pro se complaints without an attorney certification. For one thing, it was not entered in any pending suit, as was done in *Smith v. Adamson*.[25] Although the court may in some circumstances issue sua sponte dismissals pursuant to its inherent authority recognized in OCGA § 15-6-9 (8),[26] we have not found a case where a blanket pre-filing order was entered outside of a pending suit, imposing restrictions on the pro se right of access.

Secondly, the facts were not undisputed and were not of record,

---

[22] *Howard*, supra at 773 (1). In *Howard, judicial* preclearance was approved; in Carter's cases, that task is assigned to a non-judicial officer of the court.

[23] Compare *Procup v. Strickland*, 792 F2d 1069 (11th Cir. 1986), which involves restrictions on pro se prisoner suits, as undue burden on constitutional right of access under federal constitution. See especially dissent of Circuit Judge Johnson.

[24] Id.

[25] Supra at 699.

[26] *Ga. Receivables v. Williams*, 218 Ga. App. 313 (1) (461 SE2d 280) (1995).

although they were in some instances facts of which the court took judicial notice. In Carter's brief, which is the first opportunity he has had to dispute the factual basis for the order, he challenges the court's characterizations and findings about the outcome of the litigation in which he has been involved. The proper place for resolution of factual differences is in the trial court.

"Both the Georgia and United States Constitutions prohibit the state from depriving 'any person of life, liberty, or property, without due process of law.' United States Const., amend. XIV, sec. 1; see also Ga. Const., [Art. I, Sec. I, Par. I]. 'The fundamental idea of due process is notice and an opportunity to be heard.' "[27] As stated in *Citizens &c. Bank v. Maddox*,[28] "[t]he benefit of notice and a hearing before judgment is not a matter of grace, but is one of right." "A party's cause of action is a property interest that cannot be denied without due process. [Cit.]"[29]

Before a blanket order was entered, Carter was entitled to a hearing on the court's contemplated action to achieve the least restrictive but efficacious means while honoring the sensitive balance which must be struck between his right of access to the courts pro se and the interests of other litigants and of the public in general " 'in protecting judicial resources from the deleterious impact of repetitious, baseless *pro se* litigation.' "[30]

*Judgment vacated in Case No. A98A1631. Appeal dismissed in Case No. A98A1689. Ruffin, J., concurs. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I concur in the dismissal of Case No. A98A1689 and agree with the opinion and conclusion in Case No. A98A1631 that the superior court's order must be vacated. Nevertheless, I write separately with respect to Division 1 to outline an appropriate sanction for the demonstrably vexatious litigant, Anthony Carter.

The court's order recites that since 1989 Carter had filed, or attempted to file, 17 separate lawsuits against 29 separate defendants. The court further outlines the burden Carter's litigiousness has placed on it, stating: "[t]his Court has physically looked at the origi-

---

[27] *Hood v. Carsten*, 267 Ga. 579, 580 (481 SE2d 525) (1997). " 'The due-process clause does not guarantee to the citizen of a State any particular form or method of State procedure. Its requirements are satisfied if he has reasonable notice and opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.' *Reetz v. Michigan*, 188 U. S. 505, 508 (47 L. Ed. 563, 566, 23 Sup. Ct. 390)." *City of Macon v. Benson*, 175 Ga. 502, 508 (4) (a) (166 SE 26) (1932).

[28] 175 Ga. 779, 785 (166 SE 227) (1932).

[29] *Nix v. Long Mountain Resources*, 262 Ga. 506, 509 (3) (422 SE2d 195) (1992).

[30] *Morgan County*, supra at 924 (II).

nal files of all of these law suits, and if each were stacked on top of the other would stand more than three feet above the floor."

The complaints contained in the record also demonstrate Carter's litigious nature. The first, filed against two Fayette County Deputy Sheriffs, is entitled "Complaint on Excessive Levy Failure to Levy on Items Specified Negligence, False Affidavit Malice Conspiracy for Promotion." According to Carter's complaint, the incidents leading to that suit arose out of officers' effort to levy property to satisfy a writ "that Fayette Magistrates and Fayette County had for two suits that Superior Court Judge said were frivolous, and granted attorney fees." In other words, Carter filed a suit for the attempt to levy property to satisfy court-imposed penalties for a prior frivolous lawsuit.

Although the order which the court entered here is overly broad, it is important to acknowledge the tremendously difficult quandary courts face with respect to stubborn litigiousness of this nature. Indisputably, Carter's actions here require some curtailment. But, frequently the litigants are judgment-proof and the imposition of financial penalties for pursuing the frivolous litigation becomes meaningless.

As the opinion notes, narrow court-fashioned restrictions which incorporate judicial decision-making generally have passed constitutional muster. For example, in *Howard v. Sharpe*, 266 Ga. 771 (470 SE2d 678) (1996), the trial court entered an order which enjoined Howard from filing any lawsuits in forma pauperis unless he first obtained approval of the habeas judge and certified that the claims raised were novel. The Supreme Court held that this "narrowly drawn" order was a reasonable restriction of Howard's right of access in light of his past pattern of filing frivolous lawsuits. In *Smith v. Adamson*, 226 Ga. App. 698, 699-700 (3) (487 SE2d 386) (1997), the court held that an order requiring future suits filed by a litigious pro se litigant to be approved by the judge and accompanied by two affidavits, one of which was her own sworn assurance of propriety, did not deprive her of meaningful access to the courts. See also *Procup v. Strickland*, 792 F2d 1069 (11th Cir. 1986); compare *Bd. of Commrs. of Morgan County v. Winslow*, 862 P2d 921, 923-924 (Colo. 1993).

When confronted with vexatious litigants like Carter, courts have considerable discretion in fashioning appropriate injunctions. The court could direct the litigant to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing. See *Urban v. United Nations*, 768 F2d 1497, 1500 (D.C. Cir. 1985). The court could direct the litigant to seek leave of court before filing pleadings in any new or pending lawsuit; thus, the court could screen the complaint to determine if it had merit. See id.; *Howard*, 266 Ga. 771. In *Procup v. Strickland*, 792 F2d

1069, the court suggested other possible restrictions for a court attempting to deal with an overly litigious litigant, including: limiting the number of pages to a complaint and other pleadings; and limiting further pleadings without an order of the court — after allowing the complaint to be filed. Although these options continue to require the court to be burdened with this type of litigation, until the General Assembly funds more attorneys for public service, it is not feasible to require that a litigant obtain approval from an attorney before filing his complaint.

DECIDED DECEMBER 2, 1998.

Anthony J. Carter, *pro se.*
*McNally, Fox & Cameron, William R. McNally, Dennis A. Davenport*, for appellee.