Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 20, 2024

## 2024 CO 8

**No. 23SA146, *GHP Horwath, P.C. v. Kazazian*—Right of Access—Supervisory Power of the Court—Injunction Against Self-Representation.**

The supreme court makes the rule to show cause absolute and enjoins Nina H. Kazazian, whether acting individually or on behalf of another entity, from proceeding pro se as a proponent of a claim (e.g., as plaintiff, third-party claimant, cross-claimant, or counter-claimant) in any present or future litigation in the state courts of Colorado. While every person has an undisputed right of access to Colorado courts, that right may not be abused, and must yield to the principle that right and justice should be administered without sale, denial, or delay. When a pro se litigant hampers the efficient administration of justice to an intolerable degree, this court has a duty to stop the abuse with an injunction. The supreme court enjoins Kazazian because her actions rise to the level of being intolerable.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2024 CO 8**

**Supreme Court Case No. 23SA146**
*Original Proceeding Pursuant to C.A.R. 21*

**In Re
Petitioners:**

GHP Horwath, P.C.; Nadine Pietrowski; Bohn Aguilar, LLC;
Michael G. Bohn; and Armando Y. Aguilar,

v.

**Respondent:**

Nina H. Kazazian.

**Rule Made Absolute**
*en banc*
February 20, 2024

**Attorneys for Petitioners:**
Bohn Aguilar, LLC
Michael G. Bohn
Armando Y. Aguilar
　　　*Lakewood, Colorado*

Respondent Nina H. Kazazian, pro se
　　　*Vail, Colorado*

**Attorneys for Amicus Curiae Atrium Condominium Association, Inc.:**
Nemirow Perez P.C.
Miles L. Buckingham
　　　*Denver, Colorado*

Wollenweber Freedman, P.C.
Lee H. Freedman
      *Lakewood, Colorado*

**PER CURIAM.**

¶1 "Every person has an undisputed right of access to the Colorado courts of justice." *People v. Dunlap*, 623 P.2d 408, 410 (Colo. 1981). Yet while article II, section 6 of the Colorado Constitution affords litigants the right to the administration of justice "without sale, denial or delay," this right is impeded when a pro se party "pursues myriad claims without regard to relevant rules of procedural and substantive law." *Bd. of Cnty. Comm'rs of Morgan Cnty. v. Winslow*, 862 P.2d 921, 923 (Colo. 1993). In those rare instances, the pro se litigant's right of access to our state courts is not absolute and may be curtailed to cease continued disruption of judicial administration. In fact, we have "the duty and the power to protect courts, citizens and opposing parties from the deleterious impact of repetitive, unfounded *pro se* litigation." *Id.* at 924 (quoting *Dunlap*, 623 P.2d at 410). By balancing a pro se litigant's "right of access" against the interests of the public, we heed that duty. *Francis v. Wegener*, 2021 CO 66, ¶ 59, 494 P.3d 598, 608.

¶2 This case requires such a balancing. In the past eleven years, respondent, Nina H. Kazazian, has initiated no fewer than ten lawsuits and twice as many appeals—most of which courts have found to be duplicative, meritless, or otherwise frivolous. Her actions have resulted in admonishment, sanctions, and ultimately her disbarment from the practice of law. Now, no longer constrained by the ethical obligations of attorneys, Kazazian persists as a pro se party, creating new proceedings or prolonging old ones to continue her fruitless attempts at

3

relitigating long-decided issues. This vexatious behavior has led petitioners—GHP Horwath, P.C.; Nadine Pietrowski; Bohn Aguilar, LLC; Michael G. Bohn; and Armando Y. Aguilar (collectively "Petitioners")—to ask us to permanently enjoin Kazazian from proceeding pro se in Colorado state courts. We recognize that this opinion is lengthy and a cumbersome read, but considering the extraordinary relief requested and Kazazian's actions, the details are necessary. Faced with the grievous nature of Kazazian's misuse of the legal system, we are compelled to grant Petitioners' requested relief.

## I. Facts and Procedural History

¶3 To be perfectly clear about why we are taking such dramatic action, we will describe in detail Kazazian's actions in the related underlying matters.[1]

¶4 Petitioners and amicus curiae Atrium Condominium Association, Inc. ("Atrium") raise two separate timelines of facts that undergird the issues with Kazazian. We will describe the facts relating to Petitioners first and the facts relating to Atrium second.

---

[1] We take judicial notice that Kazazian has initiated other lawsuits not involving Petitioners or Atrium Condominium Association, Inc. *Cf. Hanlen v. Gessler*, 2014 CO 24, ¶ 23 n.10, 333 P.3d 41, 47 n.10 (taking judicial notice of court records in a related proceeding). We decline to significantly address these other lawsuits because the multitude of cases involving Petitioners and Atrium are sufficient to support our conclusion today.

## A. Cases Involving Petitioners

¶5 GHP Horwath, P.C. ("GHP") is a now-dissolved accounting firm. Kazazian retained GHP through her divorce attorney to perform an evaluation of her then-husband's business. After Kazazian's divorce attorney withdrew from her case, GHP exited without producing an expert report.

### 1. Initial Small Claims Proceeding[2]

¶6 In August 2013, Kazazian commenced a small claims proceeding against GHP seeking return of the retainer she had paid for the expert report, plus attorney fees.[3] After a transfer requested by GHP,[4] a voluntary dismissal at Kazazian's request, GHP's appeal of that dismissal,[5] a remand, and a hearing in the Denver County Small Claims Court, Kazazian prevailed. She won a portion ($2,100) of the retainer, with judgment deferred pending resolution of the parties' requests for attorney fees, which were to be determined at a later hearing.

---

[2] Eagle County Small Claims Court Case No. 13S80.

[3] Kazazian would also sue her first and second divorce attorney (and attempt to join their attorneys), District Court, City and County of Denver, Case Nos. 14CV76 and 14CV77; her ex-husband's divorce attorney, Eagle County District Court Case No. 12CV1041; and her post-dissolution attorneys, Douglas County District Court Case Nos. 14CV30074 and 15CV30008.

[4] Denver County Small Claims Court Case No. 13S974.

[5] District Court, City and County of Denver, Case No. 14CV30271.

5

¶7     Shortly before the attorney-fees hearing, GHP offered Kazazian $10,000 to settle the matter and dismiss the case with prejudice. After requesting that a signed, notarized copy of the settlement agreement be sent to her for her acceptance and signature, Kazazian rejected the offer and made a counteroffer for $10,800, which GHP did not accept. At the attorney-fees hearing, the parties stated that they had not reached a settlement; Kazazian was then awarded a final judgment of $2,360. Subsequently, Kazazian emailed GHP representing that she had previously signed GHP's $10,000 offer and had dropped it in the mailbox. She attached a copy of the signed and notarized agreement, now countersigned by Kazazian, and demanded payment of $10,000. GHP disregarded this demand and sent Kazazian a check for the final judgment amount of $2,360, which she eventually cashed.

## 2.  Breach of Settlement Agreement Lawsuit[6]

¶8     About a month later, in June 2016, Kazazian sued GHP and its CEO, Nadine Pietrowski, alleging that they had breached the settlement agreement from the small claims case. The district court granted GHP summary judgment with costs, finding that no contract existed as to the settlement agreement. Specifically, the court found that Kazazian failed to accept the settlement offer by the deadline,

[6] District Court, City and County of Denver, Case No. 16CV32258.

6

affirmatively rejected the offer, and instead made a counteroffer with materially different terms. The court also held that Kazazian's actions—including making a counteroffer, explicitly rejecting GHP's offer, and submitting hearing exhibits that did not include a settlement agreement—clearly indicated that she did not honestly believe she had accepted the settlement offer.

### 3. Appeal of Summary Judgment and Costs[7]

¶9 In April 2017, after receiving several extensions of time yet still filing late, Kazazian appealed the district court's summary judgment order. After oral argument, a division of the court of appeals affirmed. Furthermore, the division awarded GHP its appellate attorney fees, holding that Kazazian's appeal was substantially frivolous or groundless. Specifically, the division held that Kazazian's arguments were contrary to the most fundamental concepts of contract law and not rationally grounded in credible evidence. The division then remanded the case to the district court to determine GHP's appellate attorney fees.

### 4. Attorney Fees and Costs Claims Arising from Breach of Settlement Agreement Lawsuit

¶10 Following the summary judgment order, GHP and Pietrowski moved the district court for attorney fees, arguing that Kazazian's breach of settlement

---

[7] Court of Appeals Case No. 17CA609.

7

agreement lawsuit lacked substantial justification. A day late, Kazazian filed an opposition to GHP's bill of costs and later a motion to strike GHP's reply. The district court awarded GHP the costs it had requested, ordered that the motion for attorney fees be set for hearing, and denied Kazazian's motion to strike. In advance of the hearing, Kazazian attempted to subpoena GHP's executives, but the subpoenas were quashed.

¶11 After an evidentiary hearing, the district court found that Kazazian's claim was substantially frivolous and groundless because she "presented no rational argument based on evidence or law to support her breach of contract claim," and that instead "the evidence demonstrated that no one, especially an experienced lawyer, would have believed that a contract existed." The district court awarded GHP and Pietrowski $17,757.50 in attorney fees.[8] Kazazian appealed the award.[9] She also moved for reconsideration of the court's order, which the district court denied.

¶12 Kazazian sought a stay of the judgment pending the appeal. After GHP attempted to satisfy the judgment by garnishing two of Kazazian's bank accounts,

---

[8] The court initially awarded $27,657.50 but later amended this to $17,757.50 in attorney fees and $568.63 in costs for defense of the breach of contract claim, and $147.73 for the bill of costs.

[9] *See infra* Part I.A.5 regarding Court of Appeals Case No. 17CA1939.

Kazazian filed two claims of exemption and moved to vacate the writ of garnishment. After two hearings,[10] the court denied both claims of exemption, the motion to vacate, and the motion to stay. GHP then served Kazazian with interrogatories and a subpoena for a C.R.C.P. 69 examination to be held in November 2018. After filing a motion to quash, a motion for entry of partial satisfaction of judgment, a motion for leave to deposit the balance of the judgment with the court pending appeal, a second motion for stay of the judgment, a notice of satisfaction of judgment, a second motion to quash, and after the court held another hearing, Kazazian finally gave GHP a check for the judgment covering the breach of contract attorney fees and costs.

---

[10] For the first hearing, Kazazian filed a motion requesting that the hearing be reset for a different time, that the hearing proceed by telephone, and that the court issue written orders. The court denied the motions. Kazazian moved for reconsideration, which was granted in part, allowing Kazazian to appear by telephone. Kazazian then moved to have a different judge preside over the hearing, which was denied. The judge issued a minute order noticing the hearing. Kazazian filed a motion requesting reconsideration of the minute order. The first hearing was continued at Kazazian's request. In that motion, she also raised the argument that because GHP had dissolved, its attorney, Bohn, could no longer seek to satisfy GHP's judgment against her.

## 5. Appeal of Order Granting Attorney Fees[11]

¶13 While the underlying district court case was proceeding, Kazazian appealed the district court's award of attorney fees. She also moved to stay the underlying proceedings, which the court denied. After receiving two extensions of time, Kazazian filed a "draft" opening brief,[12] an amended opening brief, a combined reply and answer (after three further extensions of time), and a motion to both strike GHP's combined opening brief and answer and to dismiss GHP's cross-appeal.[13] Eventually, a division of the court of appeals affirmed the district court's grant of attorney fees.

¶14 Pertinent here, the division agreed with the district court that Kazazian "had invented her claim 'out of whole cloth,'" that her assertions were "incredible," that she "made no effort to determine the validity of her claim," that she "made no attempt to reduce or dismiss her invalid claims," and that she "made no attempt to demonstrate that the facts bearing upon the validity of her claim were somehow unavailable to her from the inception." The division concluded that Kazazian's

---

[11] Court of Appeals Case No. 17CA1939.

[12] The court of appeals characterized the brief as "a draft pleading," because it featured a large "draft" watermark on each page; it was also improperly designated as "suppressed." The court struck the brief.

[13] Kazazian argued that because GHP had dissolved, it could no longer "act in this appeal," contrary to section 7-114-105(2)(e), C.R.S. (2023).

complaint was "nothing more than an 'attempt at revisionist history' in order 'to create something of an "insurance policy" in the event of an unfavorable result following the hearing' in small claims court," meaning she had no legal or factual grounds upon which to pursue a breach of contract claim.

¶15 Further, the division held that the district court did not abuse its discretion in determining the amount of fees awarded. In addressing Kazazian's conclusory arguments to the contrary, the division stated that Kazazian's characterization of GHP's counsel's conduct as vexatious "look[ed] a lot like a case of the 'pot calling the kettle black,'" considering that the district court had summarized Kazazian's breach of contract suit as "the very epitome of prosecuting an action in bad faith."

¶16 Finally, the division awarded GHP attorney fees related to defending against Kazazian's combined motion to strike and motion to dismiss GHP's combined answer and opening brief because her pleading was frivolous.

### 6. Attorney Fees and Costs Resulting from Summary Judgment Appeal and Attorney Fees Appeal

¶17 At the conclusion of both appeals, each party filed a bill of costs with the district court. Additionally, GHP submitted a summary of attorney fees resulting from defending Kazazian's appeal of summary judgment and her combined motion to strike and dismiss. Kazazian filed her bill of costs four days late, along with separate objections to each of GHP's bills of costs after two separate extensions of time for each.

¶18 At Kazazian's request, the court set an hour-long evidentiary hearing on GHP's attorney fees. In advance of the hearing, Kazazian requested limited discovery (denied because the issue at bar was narrow—the reasonableness of fees); subpoenaed a former GHP attorney, Blake Callaway, to attend the hearing (quashed with fees awarded to Callaway because his testimony would be "wholly immaterial"); requested an extension of time in responding to the motion to quash Callaway's subpoena; and requested that the hearing be continued. Then, two days before the hearing, Kazazian moved to vacate the hearing, which the court granted.

¶19 Later, Kazazian moved for reconsideration of the motion to quash; the court denied the motion because Kazazian had failed to allege any "manifest error of fact or law" as required by C.R.C.P. 121, section 1-15(11). When Callaway filed his required affidavit for attorney fees, Kazazian opposed it (after an extension of time) and once again requested an evidentiary hearing on the affidavit. The court denied the request because Kazazian did not provide any basis, affidavit, argument, or other documentation to support her request for an evidentiary hearing. The court then awarded Callaway a downward-adjusted $1,000 in attorney fees.

¶20 In October 2019, the district court issued an order awarding GHP $22,169 for costs and fees related to the motion for summary judgment and the attorney

12

fee appeals. Because Kazazian had $1,515 in costs, the court reduced GHP's award to $20,654. Kazazian moved for post-judgment relief, requesting that a new hearing on the reasonableness of the fees be set, that the judgment be vacated, and that the court set forth findings of fact and rulings of law. The court denied the motion.

### 7. Appeal of Attorney Fees Award, Motion to Quash, and Order Denying C.R.C.P. 59 Motion[14]

¶21 In December 2019, Kazazian appealed the district court's orders awarding GHP attorney fees and costs, granting Callaway's motion to quash, and denying Kazazian's request for post-judgment relief. Prior to filing the opening brief, Kazazian moved for a limited remand for an evidentiary hearing (based on the frivolous argument regarding GHP's dissolution, see *infra* note 13 and accompanying text). The court of appeals denied the motion because Kazazian hadn't filed the required C.R.C.P. 60(b) motion in the district court. GHP requested related fees.

¶22 After four extensions of time, Kazazian filed her opening brief and then—six days before GHP's answer brief was due—a significantly amended opening brief, causing GHP to file both an answer and an amended answer. After receiving an

---

[14] Court of Appeals Case No. 19CA2347.

extension of time and having her reply briefs stricken for noncompliance with C.A.R. 28(h), Kazazian filed her reply brief. Then, after a postponement at Kazazian's request, the court of appeals heard oral argument; it subsequently affirmed the $20,654 in attorney fees and costs to GHP and the $1,000 in attorney fees to Callaway. The court denied Kazazian's petition for rehearing.

### 8. Kazazian's Dubious Formation of GHP Horwath P.C. II and Related Lawsuit[15]

¶23 Meanwhile, back in November 2018, Kazazian formed an entity named "GHP Horwath P.C." ("GHP II") with the Colorado Secretary of State. Then, in May 2019, Kazazian began corresponding with GHP's attorney, Bohn, purporting to be the attorney for GHP. In that correspondence, Kazazian demanded that the attorney fees check she paid to the real GHP in November 2018 be handed over to her newly incorporated GHP II.

¶24 In July 2019, Kazazian filed a complaint on behalf of GHP II against Bohn, Aguilar, and their law firm. She alleged that Bohn and Aguilar were not authorized to represent GHP and that they'd taken the attorney fees award and withheld it from GHP, but she alleged no specific legal claim. Bohn, on behalf of

---

[15] Jefferson County District Court Case No. 19CV31103.

the real GHP, moved to disqualify Kazazian as GHP's attorney. In early August 2019, Kazazian voluntarily dismissed the lawsuit.

### 9. Post-Appeal Filings in Breach of Settlement Agreement Case

¶25 Back in the district court, in June 2020, as Kazazian was appealing the attorney fees to GHP, GHP again moved to serve Kazazian with post-judgment interrogatories and a subpoena for a C.R.C.P. 69 assets hearing. Kazazian eventually filed notice that she had responded to the interrogatories and tried to suspend GHP's collection. As a result, GHP moved for contempt related to the deficient discovery responses. A few months later, Kazazian moved to quash the Rule 69 subpoena. In September 2020, after full briefing, the court found Kazazian's request mostly "overbroad and meritless" and ordered that she supplement her responses to GHP's interrogatories. After an extension of time (and a day late), Kazazian filed unsigned responses to the interrogatories and "objections" to the September orders.

¶26 GHP filed a second motion for contempt regarding deficiencies in the responses to the interrogatories. In early November, Kazazian filed three pleadings: a motion to compel GHP to file a partial satisfaction of judgment; supplemental answers to the interrogatories; and a motion for an extension of time to respond to the contempt citation. The court granted GHP's motion for a contempt citation and struck from the record Kazazian's "objections" to the court's

15

September orders. Kazazian moved to strike GHP's response to her motion to compel. The court denied the motion to compel, stating that it "lack[ed] merit and appear[ed] to have been filed for an improper purpose." Similarly, the court denied the motion to strike because it lacked merit, noting that because Kazazian "has repeatedly accused defense counsel of falsehoods, unprofessional (indeed, criminal) behavior, and taking numerous actions based on ulterior motives," her motion "rings hollow." Later, GHP moved for attorney fees related to the motion to compel.

¶27 In December 2020, the district court issued a contempt citation regarding the unpaid judgment. Twenty days later, GHP received a check from Kazazian for $19,354, the remaining amount due on the judgment, less accrued interest. As a result, GHP filed a motion requesting a status conference. The court ordered expedited briefing on the motion, but instead of filing her response, Kazazian moved (a day late) for an extension of time to respond and for entry of satisfaction of judgment. After an attempt by Kazazian to vacate the status conference, the court denied Kazazian's motion for entry of satisfaction of judgment.

¶28 In February 2021, with the judgment still not fully paid, the court issued a second contempt citation, setting advisement for March. The next day, Kazazian filed a second motion for entry of full satisfaction of judgment. The same day that GHP filed its response, Kazazian filed a reply, arguing (incorrectly) that GHP had

16

responded late. The court struck the reply because it was inaccurate and contained "attacks on the Court," and it ordered a proper reply due the following week. After Kazazian filed that reply (a day late), the court struck it as well, noting that Kazazian had equated GHP's arguments to "vomit," which negated the reply under C.R.C.P. 12(f).

¶29    The case then went quiet for a few months as the parties shifted their attention to the appeal related to attorney fees, *see supra* Part I.A.7, and in August 2021, the district court announced that it would delay rulings in the case until that appeal was decided. In February 2022, after the appeal concluded, GHP filed its appellate bill of costs for $376, which the court approved. Further motions practice, with extensions of time for Kazazian, also resumed. Notably, the district court struck a response by Kazazian because she filed it under seal without leave of the court to do so, and because it contained "numerous immaterial and impertinent attacks on defense counsel" and was "highly disrespectful of the Court, bordering on contemptuous." In April, the court denied Kazazian's second motion for entry of full satisfaction of judgment because her statutory argument lacked merit and because interest was still outstanding. Between September and December, Kazazian filed five motions or pleadings with the court, which were all denied because they were either "untimely . . . [and] vexatious," "untimely [and] redundant," or "untimely and meritless."

¶30 In January 2023, the court granted a motion by GHP for attorney fees relating to one of the fall 2022 motions, entering judgment for $7,206 with interest. After the court denied Kazazian's motion to vacate, GHP filed a motion requesting a standing objection to Kazazian's motions. The court granted the motion, ordering that it would be assumed that GHP opposed any motions filed by Kazazian, and that GHP need not respond to future or pending motions unless the court issued an order requesting otherwise.

¶31 In March, Kazazian filed a satisfaction of judgment in full, and GHP moved to strike because the judgment still had not been satisfied. The court granted the motion to strike and further ordered that "under penalty of contempt of court, [Kazazian] is prohibited from filing in this Court any further unilateral satisfactions of judgment, or requests for satisfactions of judgment, without the approval and signature of Defendants' counsel." Undeterred, six days later Kazazian filed a "Notice and Motion for Entry of Satisfaction of Judgment Full," without GHP counsel's signature. The court promptly struck the filing, found that Kazazian was in indirect contempt of court, and instructed GHP to set a contempt advisement hearing; it also issued a contempt citation. The next day, Kazazian moved to vacate the court's two March orders and the contempt citation, which the court denied.

¶32 In June, after GHP served Kazazian with a contempt citation, Kazazian moved to quash, arguing that she had not been properly served. In the interest of judicial economy, the court dismissed the contempt citation and vacated all future dates. Likewise, the court denied GHP's motion for attorney fees regarding Kazazian's motion to compel because "it would not serve any purpose given the posture of the case."

### 10. Appeal of Order Granting Attorney Fees Regarding Motion to Vacate[16]

¶33 In March 2023, Kazazian appealed the district court's January order awarding attorney fees to GHP for responding to Kazazian's vexatious motion to vacate. Kazazian requested and received an extension of time to file her opening brief, but she still failed to meet the filing deadline. The court of appeals issued a rule to show cause, and when Kazazian failed to respond, it dismissed the appeal with prejudice in October 2023.

### B. Cases Involving Atrium

¶34 We now turn to the facts pertaining to a second, unrelated matter involving Kazazian and Atrium, a Colorado homeowners' association.

---

[16] Court of Appeals Case No. 23CA362.

## 1. Initial Judicial Foreclosure Action[17]

¶35   In August 2015, Atrium filed a complaint for judicial foreclosure against Kazazian and her corporate entity, NHK Investments ("NHK"), regarding a condo located in Denver.  After dilatory tactics,[18] Kazazian entered a limited entry of appearance, moved to quash service of process, and moved to vacate an order permitting service by mail.  The court denied the motions and ordered that Kazazian file an answer.  Kazazian requested an extension of time and then hired an attorney to represent her in the matter, but she also continued filing documents on her own behalf.  After her attorney missed a discovery deadline, he moved to withdraw, alleging that Kazazian had contacted his malpractice insurance carrier about a possible claim.  The court granted the motion, finding that "the attorney/client relationship has broken down completely."  Kazazian entered her appearance on her own behalf and requested that the discovery deadline be extended once again.  Eventually, the court held a discovery hearing and denied further extensions.

---

[17] District Court, City and County of Denver, Case No. 15CV32907.

[18] Inter alia, Kazazian denied authority to accept service on behalf of NHK, represented that she was not a member of NHK, and continually claimed she was unavailable for a hearing on service.

¶36 Trial was set for December 2016. As the date drew close, Kazazian moved to dismiss, filed three separate motions for summary judgment, and requested clarification of the court's prior orders. In responding to Kazazian's request for clarification, the court pointed to ongoing delays, stated that the case was "not factually or legally complex," and emphasized that it wouldn't push the case from its scheduled trial date. The court also denied the motion to dismiss. Kazazian then sought certification of both orders under C.R.C.P. 54(b); the court denied the motion because none of the claims had been adjudicated. Disregarding established appellate rules, Kazazian filed an interlocutory appeal of that order; the court of appeals dismissed it for lack of jurisdiction. The district court later denied all three of Kazazian's motions for summary judgment.

¶37 In September, while still represented by counsel, Kazazian moved to continue the trial on her own behalf, and NHK—through its manager, Bo Karlson[19]—requested the same. After a telephone hearing in November, the court continued the December trial by ten days to accommodate Kazazian's schedule. The court stated that it wouldn't further continue the trial unless new counsel or Kazazian entered an appearance on behalf of NHK. After Kazazian filed three

---

[19] Pleadings by NHK listing Bo Karlson as the filer sometimes spell his name "Karlson" and other times spell it "Karlsson." We selected one for clarity.

21

successive entries of appearance—the first for the purpose of resetting the hearing (struck by the court), the second with several conditions (causing the court to deny a continuance), and the third finally as trial counsel—the court ordered that the trial date be reset, pending agreement of the parties on a new date. At the eleventh hour, Kazazian called the court to accept a June 2017 date previously offered by Atrium's counsel, Wendy Weigler. Kazazian subsequently moved to continue the trial; the court denied the motion, finding that the parties "have had more than ample advance notice of the trial date."

### 2. Mediation and Settlement Agreement

¶38 The parties attended mediation in May 2017. At mediation, the parties agreed that NHK would sell the condo unit within six months and that Atrium would receive an initial payment of $10,000 within thirty days of mediation and another after the unit sold. If the unit did not sell within six months, then NHK and Kazazian would confess an order and decree of foreclosure. After Kazazian attempted to rescind the agreement, Atrium filed the settlement agreement with the court, requesting that it be approved and enforced.

¶39 Kazazian objected, and after a telephone conference, the court set the matter for an evidentiary hearing. Kazazian, on behalf of herself and NHK, moved to continue both the evidentiary hearing and the June trial. The court denied the motion, lamenting the sluggish nature of the case—that it was "now 647 days old,"

22

that the record contained over 400 filings, that the trial date had been addressed no less than fifteen times, and that the underlying issue was "not factually complex"—and noting that "[i]t is in the interest of not only the litigants but also other litigants in this court and to the general public that, at some reasonable point, there should be an end to litigation." After the evidentiary hearing, the court granted Atrium's motion to enforce the settlement agreement. Kazazian appealed that order.[20]

### 3. First Lawsuit Against Atrium and Its Attorneys[21]

¶40 In July 2017, Kazazian filed a lawsuit against Weigler's law firm, Weigler individually, one of Weigler's law partners, Atrium's president, Atrium, and seven unnamed members of Atrium's board (collectively "Defendants"). Defendants moved to dismiss, alleging in pertinent part that the complaint was a collateral attack on the court's prior rulings in the judicial foreclosure action. After an extension of time, Kazazian filed her response a day late. In January 2018, following a flurry of filings between the parties, Kazazian voluntarily dismissed the complaint.

---

[20] *See infra* Part I.B.5 regarding Court of Appeals Case No. 17CA1247.

[21] Jefferson County District Court Case No. 17CV31162.

## 4. Attorney Fees

¶41 In September 2017, the court granted Atrium attorney fees related to preparing for the evidentiary hearing on enforcement of the settlement agreement, finding that Kazazian's positions were substantially groundless and frivolous; it instructed the parties to set a hearing regarding such fees to be held within sixteen days. Pertinently, the court found that Kazazian had accepted revisions to the agreement and her attempted repudiation was unacceptable because it was not supported by any rational argument based on the law or the evidence. Concordantly, the court denied Kazazian's request for attorney fees because she'd filed the majority of the 400 filings in the case, she'd likely contributed as much or more to the time and expense of bringing the case to closure, and Atrium's claims were not frivolous or groundless.

¶42 After dilatory tactics relating to setting the attorney-fees hearing as directed by the court (including several requests for clarification of orders), Kazazian agreed to set the hearing for November 2017; she also requested that the court order Atrium's board members to appear in person at the hearing. The court sustained Atrium's objection, finding that Kazazian spent much of her briefing on

the objection[22] rearguing the case and that her prior cross-examination at the May 25 evidentiary hearing was "prolix and repetitive." Kazazian again requested clarification of the order. She then moved for recusal of the district court judge, which the judge denied from the bench at the attorney-fees hearing. The court awarded Atrium $3,920.

¶43 A few weeks after the hearing, Kazazian requested a satisfaction of judgment related to the initial (late) $10,000 payment she had made to Atrium pursuant to the settlement agreement; Atrium objected. Kazazian filed anew her motion for the presiding judge to recuse and a motion for stay of the attorney fees judgment. The court denied the motion to recuse. Later, Kazazian filed a motion (which she then amended) to compel Atrium to file satisfactions of judgment in the case for the payments she'd made of $3,920 and $10,000. The court denied the motion, finding that because Kazazian hadn't complied with the settlement agreement, Atrium still had a valid claim for $50,000. Over two months later, Kazazian moved for relief from and amendment of the order, which the court summarily denied. Kazazian then appealed the orders denying her motions for

---

[22] The court noted that the objection had been filed a day late and exceeded the court's specified page length.

relief and amendment.[23]  Atrium moved to dismiss the appeal because the time to appeal had long expired.  Kazazian failed to respond, so the court of appeals granted the motion to dismiss and denied Kazazian's motion to reconsider.

### 5.  Appeal of Evidentiary Hearing Findings[24]

¶44    Returning to July 2017, Kazazian proceeded with an appeal of the district court's order enforcing the settlement agreement.  After the matter was dismissed and reinstated, and following three extensions of time for Kazazian to file the opening brief, Kazazian moved to stay execution of the judgment and the proceedings below pending the appeal, which the court denied.  After an additional request for an extension of time, Kazazian filed her amended opening brief in March 2018.  After the court of appeals struck the brief for noncompliance with the formatting rules, Kazazian amended it again and refiled it later that month.  After receiving another extension of time, Kazazian filed her reply brief.  Following oral argument, a division of the court of appeals affirmed the district court's judgment in November 2018.

---

[23] Court of Appeals Case No. 20CA1402.

[24] Court of Appeals Case No. 17CA1247.

### 6. Second Lawsuit Against Atrium and Its Attorneys[25]

¶45 In early December 2019, Kazazian filed a second lawsuit against Weigler's law firm, two attorneys at the firm including Weigler, a second law firm, the president of Atrium, Atrium, and four Atrium board members. Kazazian sought relief against the defendants for breach of their duties to NHK and Atrium (of which NHK was a member), sought declaratory and injunctive relief, and requested attorney fees and costs. After briefing, the attorneys and board members were dismissed as parties. Atrium filed its answer to the complaint, along with counterclaims for judicial foreclosure, breach of the settlement agreement, breach of declaration, and abuse of process. Kazazian filed motions to compel Atrium to permit her to inspect corporate records, which after full briefing the court denied.

¶46 In the course of the proceedings, Kazazian subpoenaed GHP's attorney, Bohn, for a deposition; subpoenaed GHP to attend and produce documents at the deposition; and identified Atrium's counsel as a will-call witness at trial. After two motions to quash and a motion to strike, respectively, and full briefing (with extensions of time for Kazazian), the court granted the motions. The court found that Kazazian had subpoenaed Bohn only to depose him about matters that had

---

[25] Jefferson County District Court Case No. 19CV31784.

nothing to do with her lawsuit against Atrium and that it was "patently evident" that the topics to be covered in the GHP subpoena had "nothing to do with this case."[26] The court found that Kazazian issued the subpoena to GHP in bad faith and for improper purposes, that it was frivolous and vexatious, and that it unnecessarily expanded the proceedings.[27] Therefore, the court awarded attorney fees to GHP related to the motion to quash.

¶47 Atrium subpoenaed Kazazian for a deposition, which caused Kazazian to file multiple pleadings, including a motion for a protective order, a motion to strike, and several requested extensions. After a hearing, the court ordered that the deposition take place. Despite the order, on the eve of the scheduled deposition, Kazazian requested a second hearing, where the court affirmed that the deposition must take place and ruled that Kazazian had willfully disobeyed the court's order by making an intentional effort to prevent her deposition.

---

[26] At this point, GHP was drawn into the Atrium litigation by Kazazian's bad-faith subpoena of GHP. Because the subpoena emanated from the Atrium litigation, we have kept the facts related to this GHP subpoena, motion to quash, and resulting attorney-fees litigation within this Atrium Part I.B, despite the prior Part I.A devoted to GHP.

[27] Despite this ruling, Kazazian would later attempt to subpoena GHP and its insurer again, this time to attend her contempt hearing resulting from unpaid attorney fees awarded as a sanction for the previous improper subpoena of GHP. *See infra* Part I.B.7.

28

Atrium filed a motion under C.R.C.P. 37(b)(2) for relief due to Kazazian's failure to comply with the court's order regarding the deposition and proposed sanctions, which Kazazian moved to strike. A deposition was finally held, but Kazazian walked out mid-questioning.

¶48 As a matter of course, Kazazian filed documents into the case as confidential, which the court later found was groundless, causing the court to strike the designation.[28] Eventually, after multiple discovery disputes and hearings,[29] each party moved for summary judgment, with Kazazian filing three separate motions. The matter was set for a six-day trial for early October 2021.

¶49 In the weeks leading up to the trial, Kazazian filed several motions regarding evidence, regarding absentee testimony, to strike the proposed trial management order, and for extensions of time to reply to Defendants' responses to her summary judgment motions. The court granted the extensions, but it noted

---

[28] Despite this first infraction, Kazazian continued to improperly use the "confidential" designation, which caused Atrium to file a motion, requiring the court to again order that certain documents were not confidential. The second time, Kazazian filed an emergency motion to vacate the court's order regarding Atrium's challenges to the confidentiality of documents. The court ultimately ordered that the confidential designation be stricken, again.

[29] Kazazian consistently expanded the timelines of the hearings, which caused the court to intervene to order the hearings be set; Kazazian subsequently filed motions to have even those hearings reset.

that "the level and amount of activity/filings in this case is the antithesis of 'proportionality' relative to the needs of this litigation."  The court then entered summary judgment in favor of Atrium on most issues.  After the ruling, all that remained was one of Kazazian's claims (for breach of fiduciary duty) and two of Atrium's counterclaims (for breach of the settlement agreement and breach of declaration).  At Kazazian's request, the court vacated the trial and ordered it to be reset within five months.  Later, Kazazian moved to vacate the summary judgment order; the court denied the motion.

¶50  In October 2021, upon learning that the sale of the condo was set to close the following day, Atrium filed an emergency motion for a preliminary injunction to have the proceeds attach and be deposited into the court registry.  The court ordered that a hearing on the injunction be set.[30]  After a motion to vacate the order, the court held a hearing on December 10, at which it granted the preliminary injunction.[31]  The court also held a hearing (which Kazazian sought to continue, to no avail) on attorney fees on December 15, where it granted GHP attorney fees

---

[30] In its order, the court noted that despite Kazazian indicating that she could not perform her duties in a court of law or participate in legal proceedings for one month due to medical reasons, she had filed no less than five pleadings in that period.

[31] Kazazian filed an emergency motion to continue the hearing and to withdraw as counsel, which the court denied.

related to the motion to quash the subpoena of GHP, including fees related to the hearing. Time ran out, causing the court to continue the remaining two issues (a motion for sanctions and a discovery violation motion) to a new January 20 hearing. The next day, the court granted GHP's request for $21,270 in costs. Kazazian appealed.[32]

¶51 The day before the January 20 hearing, Kazazian moved for a continuance and clarification. The morning of the hearing (which was set for the afternoon), the court denied Kazazian's request for a continuance and reiterated prior instructions regarding the hearing. Less than an hour later, Kazazian filed a forthwith motion for change of judge. At the noon hearing, the court heard argument on the motion to recuse and then reset the hearing for February 8 to rule on the motion to recuse and to hear the two original remaining issues.

¶52 On Saturday, February 5, Kazazian filed another emergency motion for a continuance and clarification. The court issued an order the morning of February 8 stating that it would rule on the prior motion to recuse at the hearing and that all parties were required to attend. Kazazian emailed Atrium's counsel to inform him that she would not attend; Atrium's counsel attended and notified

---

[32] *See infra* Part I.B.9 regarding Court of Appeals Case No. 22CA218.

the judge of Kazazian's email. When Kazazian did not appear at the hearing, the court attempted to contact her by phone and email. After a brief recess and no response from Kazazian, her email to opposing counsel was read into the record, and the court found that Kazazian voluntarily chose not to attend the ordered hearing. The court then denied the motion to recuse, denied the motions to continue and for clarification, and heard argument on the motion for sanctions. The court found that Kazazian's failure to comply with court orders in the case was significant and commented that the case should be ready for trial after three years, but Kazazian had yet to even disclose the members of NHK and neither she nor NHK had been properly deposed. As sanction for the willful failure to comply with its orders to sit for depositions, the court found it proper to strike both Kazazian's remaining claim in the case and her answer as it pertained to Atrium's remaining counterclaims.

¶53 Subsequently, Atrium moved for default judgment related to the hearing order. The court granted Kazazian two extensions of time to respond, but she never did, so the court first entered default judgment on two of Atrium's counterclaims and later entered default on the third. The court ordered that Atrium could file a motion for attorney fees with the court through post-judgment relief.

## 7. Contempt Citations

¶54 After not receiving payment for the judgment related to its attorney fees for the motion to quash in the Atrium litigation, GHP moved for contempt against Kazazian. Kazazian received extensions of time to respond, but she failed to do so; she also filed motions that were denied, and ultimately failed to appear at the advisement hearing. After receiving briefing on whether an arrest warrant should issue, the court ordered that personal service of the contempt citation and motion must precede any further proceedings on contempt.[33] After a new contempt citation was issued, Kazazian moved to vacate the judgment and contempt citation (denied), then once again failed to appear, causing a warrant to issue. The next day, Kazazian appeared, and the court stayed the warrant until the advisement hearing could be held. After advisement, the contempt hearing was set for February 2023.

¶55 In November 2022, Kazazian moved for satisfaction of judgment,[34] which the court would later deny. In December 2022 and January 2023, Kazazian filed

---

[33] On August 10, 2022, Kazazian filed a C.A.R. 21 petition with this court (22SA259) on behalf of herself and NHK, seeking mandamus to require the district court to reverse its orders imposing sanctions, awarding attorney fees, and denying the motion to recuse. That petition was denied.

[34] Kazazian filed the motion as "[unopposed]" despite GHP being "categorically opposed."

no less than five motions with the court requesting clarification of orders, amending prior motions, seeking to strike GHP filings and prior court orders, purporting to "amend" the court's prior orders, requesting an extension of time, and asking the court to require GHP to attend and testify at the contempt hearing. The day before the February contempt hearing, Kazazian filed yet another forthwith motion for change of judge, causing the contempt hearing to be reset to April 28.[35] In a thorough order, the judge denied the motion to recuse. Kazazian then moved to have the garnishment stricken and again moved for entry of satisfaction of judgment. The court denied the motions, finding that Kazazian had not satisfied the judgment.

¶56 Two days prior to the contempt hearing, Kazazian moved for a continuance, citing transportation issues. The court granted the continuance and reset the hearing for June. Finally, in early June, Kazazian hand-delivered a check to GHP, which GHP cashed, satisfying the judgment for attorney fees. At that point, the court vacated the contempt hearing. The court also granted Atrium's motion for attorney fees against Kazazian, awarding Atrium $148,967.86 in attorney fees and

---

[35] On the same day, Kazazian filed a C.A.R. 21 petition with this court (23SA59), along with an emergency motion seeking a stay of the contempt proceedings. Both the petition and the motion were denied.

34

$3,189.09 in costs; the court found that because NHK hadn't filed a response, the motion had been confessed.

### 8. Appeal of Summary Judgment Order[36]

¶57   In November 2021, while the district court case was still pending, Kazazian appealed the district court's summary judgment order in favor of Atrium, its order quashing the Atrium subpoena, and other related issues. Atrium moved to dismiss on the basis that there was no final judgment in the case and the appeal was brought simply to delay the underlying action. Despite requesting three extensions of time, Kazazian never responded to the motion to dismiss, and the court of appeals dismissed Kazazian's appeal for lack of a final, appealable order; it also awarded attorney fees and costs to Atrium, to be determined by the district court. Kazazian's petition for rehearing was denied.

### 9. Appeal of Attorney Fees Awarded to GHP[37]

¶58   In February 2022, Kazazian, on behalf of herself and NHK, filed a notice, and then an amended notice, of appeal of several district court orders related to GHP's motion to quash in the Atrium litigation, despite the motion to quash being

---

[36] Court of Appeals Case No. 21CA1771, appealing from Jefferson County District Court Case No. 19CV31784.

[37] Court of Appeals Case No. 22CA218, appealing from Jefferson County District Court Case No. 19CV31784.

a non-final, unappealable order. The court of appeals initially dismissed the case for lack of jurisdiction, but after Kazazian petitioned for rehearing, it reinstated the appeal. Six months after her initial notice of appeal, and before she filed her opening brief, Kazazian twice moved to supplement the record, moved to disqualify GHP's attorneys based on the previously rejected argument about GHP's 2018 dissolution, requested clarification and reconsideration of orders, filed three motions regarding e-filing, moved for a limited remand and stay of the briefing schedule, and requested four extensions of time to file her opening brief.

¶59 Kazazian filed her opening brief in November 2022, but the court struck it for noncompliance with C.A.R. 28 and 32 and ordered that it be refiled. The day before the amended brief was due, Kazazian sought a fifth extension of time. The court denied the motion and ordered that the appeal be dismissed with prejudice. Kazazian then moved to petition for rehearing out of time, which was denied. After receiving two extensions of time from this court, Kazazian filed a petition for writ of certiorari, which was denied.[38]

---

[38] Supreme Court Case No. 23SC106.

### 10. Appeal of Entry of Default Judgment and Discovery Sanctions[39]

¶60    In June 2022, Kazazian appealed the district court's orders entering default judgment for GHP, imposing discovery sanctions, and other issues.  After Atrium moved to dismiss, the court of appeals issued an order to show cause why the appeal should not be dismissed for lack of a final, appealable judgment, noting that (1) damages hadn't yet been determined, and (2) Kazazian hadn't moved to set aside the default judgment in the district court.  After Kazazian's response, the court granted Atrium's motion to dismiss and awarded Atrium attorney fees, to be determined by the district court.  After an extension of time, Kazazian filed a petition for rehearing, which was denied.  Kazazian then turned to this court, seeking and receiving three extensions of time to file a petition for writ of certiorari.  Kazazian finally filed her petition after a show cause order issued requiring Kazazian to show why the case should not be dismissed for failure to file a petition.[40]  In May 2023, certiorari review was denied.

---

[39] Court of Appeals Case No. 22CA1070, appealing from Jefferson County District Court Case No. 19CV31784.

[40] Supreme Court Case No. 22SC893.

## 11. Appeal of Entry of Default Judgment for Atrium on Counterclaims[41]

¶61 In August 2022, Kazazian filed a notice of appeal of the district court's order entering default judgment for Atrium on its counterclaims, imposing sanctions, and denying her motion for change of judge, among other issues she'd brought in other appeals. Atrium moved to dismiss on the basis that there was no final judgment in the case, and the appeal was brought simply to delay the underlying action. The court granted Atrium's motion to dismiss and awarded attorney fees and costs to Atrium, to be determined by the district court.

## 12. Second Appeal of Default Judgment, Sanctions, and Denial of Motion to Recuse[42]

¶62 In January 2023, Kazazian filed an appeal on behalf of herself regarding the district court's default judgment order for GHP and the orders granting discovery sanctions, denying sanctions against GHP's counsel, and denying the motion for change of judge. On the same day, Kazazian filed a separate appeal on behalf of NHK, appealing the district court's order entering default judgment on behalf of Atrium on its third counterclaim, an issue regarding the summary judgment order,

---

[41] Court of Appeals Case No. 22CA1381, appealing from Jefferson County District Court Case No. 19CV31784.

[42] Court of Appeals Case Nos. 23CA145 and 23CA146 (consolidated into 23CA145).

and orders denying sanctions against Atrium's counsel and denying the motion for change of judge. The court sua sponte consolidated the appeals. After several motions and a court order requiring that NHK be represented by an attorney, a lawyer entered her appearance for NHK and filed NHK's opening brief in November 2023.

## II. C.A.R. 21 Petition

¶63 In June 2023, Petitioners asked us to exercise our original jurisdiction under C.A.R. 21. Unlike the typical Rule 21 petition, they don't seek relief from a specific underlying trial court order. Instead, they argue that absent our express and broad prohibition, and without the supervision of a licensed attorney, Kazazian's penchant for filing new and frivolous lawsuits and appeals will continue unabated. Accordingly, they ask us to enjoin Kazazian "from ever proceeding pro se as a proponent of any claim or other request for relief, including the filing of papers and making court appearances, whether acting individually or on behalf of a trust, company or other entity, in any pending or future litigation in the state courts of Colorado." After we issued a rule to show cause why Petitioners' requested relief should not be granted, Atrium filed an amicus brief supplementing the history of Kazazian's past actions and supporting Petitioners' requested relief. After a request for extension of time, Kazazian filed her answer brief, supplemented later by an amended answer brief.

39

## III. Analysis

¶64    While extraordinary, it is wholly within this court's discretion to grant relief under our original jurisdiction. C.A.R. 21(a)(1). Through C.A.R. 21's narrow scope, the relief we grant is limited in purpose and availability. *Winninger v. Kirchner*, 2021 CO 47, ¶ 17, 488 P.3d 1091, 1095. In limited instances, we exercise our original jurisdiction to enjoin an individual from proceeding in Colorado courts without an attorney. *See, e.g.*, *Francis*, ¶ 53, 494 P.3d at 608 (collecting cases). Our power to provide this extraordinary remedy is rooted in article VI, section 2(1) of the Colorado Constitution, which imbues us with general superintending powers over all state courts, including the power to stop abuse of the judicial process. *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Barday*, 594 P.2d 1057, 1058–59 (Colo. 1979); *Bd. of Cnty. Comm'rs of Weld Cnty. v. Howard*, 640 P.2d 1128, 1129 (Colo. 1982). We proceed by first addressing Kazazian's preliminary standing argument,[43] and then turn to the merits of Petitioners' request for an injunction.

---

[43] Kazazian also states in her answer that pro se access to Colorado courts is a right that cannot be lost without notice and a hearing but provides no legal support and makes no argument in the body of her answer regarding this statement. Thus, we decline to substantively address that statement.

## A. Standing

¶65 As a threshold matter, Kazazian argues that Petitioners lack standing to request relief.[44] This court has inherent power and an obligation to protect the lower courts from conduct that impairs the normal functioning of the state's judicial processes. Colo. Const. art. VI, § 2(1) (bestowing "general superintending control over all inferior courts"); *Dunlap*, 623 P.2d at 410 (finding "duty and the power to protect courts, citizens, and opposing parties from the deleterious impact of repetitive, unfounded pro se litigation."). Our exercise of power under article VI, section 2(1) is not dependent on the actions or entitlement of a private party to injunctive relief. *See Dunlap*, 623 P.2d at 410 ("[A]n injunction . . . is appropriate when the procedure followed by private litigants conflicts with important public rights and . . . resists other means of control."). "Our power to issue such an injunction is 'firmly established' when it is 'necessary to stop abuse of the judicial process.'" *Francis*, ¶ 53, 494 P.3d at 608 (quoting *Howard*, 640 P.2d at 1129). Any other reality would jeopardize the independence and constitutional

---

[44] Primarily, Kazazian reargues that GHP cannot file a lawsuit as a dissolved corporation. As lower courts have explained to Kazazian, the law is clear that GHP may bring and defend suits in its name, despite being dissolved. Colorado statutes provide plainly that "[d]issolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its name." § 7-114-105(2)(e).

role of this court. Thus, the standing of the parties has no bearing on our duty to issue an injunction necessary to ensure the proper functioning of the judiciary.

## B. Extraordinary Relief

¶66 "Every person has an undisputed right of access to the Colorado courts . . . but this right may not be abused. . . . [and must] yield to the principle that 'right and justice should be administered without sale, denial or delay.'" *Dunlap*, 623 P.2d at 410 (quoting Colo. Const. art. II, § 6). This principle is compromised when a pro se party "pursues myriad claims without regard to relevant rules of procedural and substantive law." *Winslow*, 862 P.2d at 923. This is because "opposing litigants must bear the expense of defending against meritless claims," and the public pays the price of increased court costs, crowded dockets, and unreasonable delay and confusion resulting from the disruption of proper judicial administration. *Id.* When a pro se litigant hampers the efficient administration of justice to an intolerable degree, it is our duty to stop the abuse with an injunction. *Barday*, 594 P.2d at 1059; *Howard*, 640 P.2d at 1129. What constitutes "intolerable" is fact-based and determined on a case-by-case basis.

¶67 For example, in the past, we have issued injunctions when a pro se party (1) files a multitude of meritless claims, *Shotkin v. Kaplan*, 180 P.2d 1021, 1022 (Colo. 1947); (2) files multiple, successive, duplicative claims, *Howard*, 640 P.2d at 1130; (3) uses a method of procedure that strains judicial resources, *Dunlap*, 623 P.2d at

42

410–11; or (4) brings claims that appear to be aimed at harassing opposing parties, *Barday*, 594 P.2d at 1058. The facts before us show that Kazazian has engaged in not just one, but all, of these intolerable abuses.

### 1. Meritless Claims

¶68 In *Shotkin*, we considered a similar scenario involving a pro se litigant who filed a "multitude of cases" in which he routinely sued "lawyers who have opposed him in his fruitless attempt in earlier litigation, and sometimes those judges who have found it compatible with their judgment to rule adversely to him." 180 P.2d at 1021–22. We recognized that such behavior "interferes with the functioning of all the courts within the jurisdiction of Colorado, including ours, and materially impedes judicial progress." *Id.* at 1022. We noted that because Shotkin wasn't a licensed attorney, he wasn't bound to "observe rules calculated to promote orderly and just administration of justice," and that he in fact violated those rules "at pleasure." *Id.* We further noted that were Shotkin licensed, "our disciplinary authority would enable us . . . to meet the situation." *Id.* We thus held that "only by the requirement that he employ counsel may we return to the normal consideration of duties to which the people have called us," and that "in the interest of discharging our never ending judicial duties, we are justified in withholding from him the right to appear in advocacy of his own writs of error." *Id.* Accordingly, we ordered that (1) whenever Shotkin "appears as plaintiff in

43

error, or plaintiff, he should promptly retain counsel," and (2) he "shall desist from instituting actions in Colorado state trial courts" without being represented. *Id.*

¶69   Here, Kazazian has similarly brought a multitude of meritless arguments in three different counties and has appealed the same on numerous occasions. For example, regarding the GHP litigation:

- breach of settlement agreement lawsuit—found meritless, substantially groundless, and frivolous;

- summary judgment appeal—found meritless, substantially groundless, and frivolous;

- first attorney fees appeal—attorney fees affirmed because her claim was "invented . . . 'out of whole cloth,'" "incredible," "nothing more than an 'attempt at revisionist history,'" and "the very epitome of prosecuting an action in bad faith";

- attorney fee award appeal motion to strike and motion to dismiss—frivolous;

- attorney fee award first motion to compel satisfaction of judgment and motion to strike—denied for "lacking merit";

- attorney fees award second motion to compel satisfaction of judgment—denied for lacking merit; and

- attorney fees motion to modify—"untimely and meritless."

¶70   And regarding the Atrium litigation:

- appeal of interlocutory orders—denied for lack of jurisdiction;

- enforcement of settlement agreement case—positions were substantially groundless and frivolous;

- subpoena on GHP for records—"issued for improper purposes, was frivolous, vexatious, and unnecessarily expanded the scope of the[]

44

proceedings . . . [because it] lacked substantial justification and constituted an abuse of discovery";

- filing documents into the second case as confidential—stricken twice by the court as improper use of the designation;

- appeal of order granting motion to quash—dismissed again for lack of jurisdiction;

- appeal of default judgment for GHP, discovery sanctions, etc.—dismissed again for lack of a final, appealable judgment, attorney fees awarded to GHP; and

- appeal of default judgment for Atrium on counterclaims—dismissed again for lack of a final, appealable judgment, attorney fees awarded to Atrium.

¶71 We count at least fourteen times that Colorado courts have found Kazazian's arguments, actions, or claims to be meritless. We conclude that this "multitude of meritless" instances rise to the level of being intolerable.

### 2. Multiple, Successive, Duplicative Claims

¶72 In *Howard*, the petitioner sought an injunction to prevent a disbarred attorney from appearing "before any state court or administrative agency," claiming that he'd "filed a multiplicity of cases of a duplicative nature causing the judicial process to be needlessly impeded." 640 P.2d at 1128. In finding "ample justification for an injunction," we noted that Howard had "initiated no fewer than fourteen actions" since his disbarment. *Id.* at 1129. We stated that, although our constitution "guarantees to every person the right of access to courts of justice," we nevertheless had the "power to enjoin a person from proceeding pro se in any

45

litigation in state courts and administrative agencies" where doing so was "necessary to stop abuse of the judicial process." *Id.* And because Howard's "constant and duplicitous pro se complaints . . . result[ed] in an unwarranted burden on the judicial process and [we]re prejudicial to the public interest," we issued the requested injunction. *Id.* at 1130.

¶73 Here, beyond filing at least one duplicative lawsuit (her second suit against Atrium and its attorneys), Kazazian has inundated the district courts in individual cases with repetitive filings. For example, Kazazian has repetitively filed motions or notices for satisfaction of judgment in the case concerning Atrium, to the point that a district court judge prohibited her from filing any more unilateral satisfactions of judgment, under penalty of contempt. The incessant level of filing by Kazazian led that same district court judge to later order that Kazazian's opposers no longer needed to respond to Kazazian's numerous motions. As a second example, separate from her motions for satisfaction of judgment are Kazazian's duplicative subpoenas of GHP's representatives, GHP's insurer, and GHP's attorneys. Wholly irrelevant to the litigation, and as lower courts have held, the subpoenas can only be seen as "an effort to expand the dispute[s]" from one case to the next unrelated proceeding. We conclude that these constant, duplicative, expansive actions by Kazazian are also intolerable.

46

### 3. Method of Procedure

¶74 In *Dunlap*, pro se plaintiffs engaged in a "method of procedure" whereby they "expand[ed] joinder of defendants to include lawyers, judges, and other parties perceived as opposing them in . . . earlier litigation." 623 P.2d at 410. We held that such behavior "threatens a serious strain on the judicial resources of this state." *Id.* Furthermore, we rejected the argument that "private and individual remedies" would suffice to cure this abuse of process; instead, we recognized that injunctions barring pro se plaintiffs from bringing lawsuits without representation are proper "when the procedure followed by private litigants conflicts with important public rights and interests and when it resists other means of control." *Id.* Specifically, we noted that when a self-represented plaintiff "fails to comply with relevant rules of procedural and substantive law," the plaintiff's "fellow citizens . . . must meet the expense of his meritless suits as a result of increased court costs, crowded dockets, and the unreasonable delay and confusion that accompanies a disruption of proper judicial administration." *Id.* at 411. Thus, we enjoined the Dunlaps "from further representing themselves as plaintiffs in any present or future actions related to or arising out of their involvement with public officers or public employees." *Id.* Here, Kazazian groundlessly filed claims against not only her opposers but her own attorneys, the attorneys representing her attorneys, and opposing parties' attorneys.

47

¶75 Beyond suing improper parties, Kazazian also abused legal procedure in terms of time, filing innumerable motions to continue and motions for extension of time. In a vacuum, such motions are generally permissible, but when considered in the context of Kazazian's relentless dilatory tactics, they rise to the level of intolerable abuse of the court system. The occasions where Kazazian timely filed without an extension are grossly outnumbered by the opposite. Kazazian frequently requested second and third extensions of time to file responsive pleadings, motions, discovery responses, and opening briefs. In many instances, even after receiving the extension, Kazazian would either file late or fail to file at all.

¶76 This strategy of protraction caught the attention of some courts, with more than one commenting that the case's lengthy timeline was outstandingly disproportionate to its simplicity. As the district court in the Atrium case noted when denying one of Kazazian's motions to continue a hearing, "[i]t is in the interest of not only the litigants but *also other litigants in this court and to the general public* that, at some reasonable point, there should be an end to litigation." (Emphasis added.) We conclude that, through her frivolous lawsuits against distant parties and her excessive expansions of case timelines, Kazazian has abused the judicial process and caused serious strain on judicial resources, meaning her method of procedure has also been intolerable.

48

## 4. Bringing Claims for the Purpose of Harassment

¶77 Finally, in *Barday*, a pro se plaintiff filed "countless motions and counter-motions" and "compiled a voluminous collection of . . . bald allegations" (including against lawyers and judges) that were "repetitive and factually unsupported." 594 P.2d at 1058, 1059. We determined that the plaintiff either (1) "ha[d] no legal claim and [was] persisting in his lawsuits merely to harass . . . those who have found it in their judgment to oppose him," or (2) "need[ed] an attorney to structure his claims for him." *Id.* at 1059.

¶78 Similarly here, either Kazazian needs an attorney to help her discern if her claims are meritorious, or she persists merely to harass her opposers. The facts appear to support the latter. The initial case against GHP arose out of Kazazian's divorce proceeding. In addition to suing GHP, Kazazian sued GHP's attorneys, her own divorce attorney, her post-dissolution attorneys, and her ex-husband's divorce attorney. Likewise, related to the matter concerning Atrium, Kazazian sued Atrium's attorneys. In one instance, the case was dismissed for Kazazian's failure to prosecute, in another, the parties jointly dismissed the case, and in yet another, the case is ongoing to this day due to Kazazian's method of protraction. Kazazian's retaliatory piling on appears to only be for the purpose of harassment. Separately, Kazazian formed a corporation in the name of GHP, and then under that guise, attempted to terminate the real GHP's counsel, recover money she had

49

paid towards the real GHP's judgment against her, and then initiated a lawsuit against the real GHP's attorneys for the same reason. Apart from being a fraud on the court, which led to Kazazian's disbarment, this particularly egregious abuse of the judicial system certainly rises to the level of harassment.

¶79 "[T]he right of access to courts does not include the right to impede the normal functioning of judicial processes. Nor does it include the right to abuse judicial processes in order to harass others." *Id.* Not only does Kazazian deprive other members of the public of precious judicial resources, but she also hampers her own causes. We conclude that Kazazian's purposes, whether for harassment, or simply requiring licensed legal advice, are intolerable because of the strain they place on the Colorado courts.

***

¶80 Having considered our past cases where an injunction was appropriate and finding that Kazazian's actions are similarly intolerable, we are compelled to make the rule to show cause absolute and enjoin Kazazian from proceeding pro se. In continuing down her litigation path, Kazazian has disregarded warnings, sanctions, attorney fee awards, and even her own disbarment. We have a duty to protect the courts and the public from further abuse. Kazazian's access to the courts is not denied—she may still proceed through an attorney of her

choice—and thus, this injunction does not infringe on Kazazian's constitutional rights. *See Francis*, ¶ 73, 494 P.3d at 610–11.

## IV. Conclusion

¶81 The rule to show cause is made absolute for the foregoing reasons. Kazazian is hereby enjoined, whether acting individually or on behalf of another entity, from proceeding pro se as a proponent of a claim (e.g., as plaintiff, third-party claimant, cross-claimant, or counter-claimant) in any present or future litigation in the state courts of Colorado. The chief judge of each judicial district shall notify the clerk's office(s) in that judge's district about this opinion and instruct the staff to reject any filing from Kazazian that violates this injunction.

**PER CURIAM.**